1999 OK CIV APP 33

**Clinton L. CORDER, Ph.D., M.D.,
Plaintiff/Appellant,**

v.

**OKLAHOMA MEDICAL RESEARCH
FOUNDATION, an Oklahoma Non-
Profit Corporation, Defendant/Appellee.**

No. 91,663.

Court of Civil Appeals of Oklahoma,
Division No. 3.

Oct. 27, 1998.

Rehearing Denied Dec. 8, 1998.

Certiorari Denied March 4, 1999.

E. Taylor Poston, Douglas C. Fellrath, Holly Waldron, Oklahoma City, Oklahoma, For Appellant.

Jack S. Dawson, Elizabeth R. Castleberry, James A. Scimeca, Oklahoma City, Oklahoma, For Appellee.

## OPINION

Opinion by CAROL M. HANSEN, Judge:

¶1 Appellant, Clinton Corder (Corder), seeks review of the trial court's grant of summary judgment in favor of Appellee, Oklahoma Medical Research Foundation (OMRF). This appeal is submitted without appellate briefing in accordance with the accelerated procedure under Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S. Supp. 1997, Ch.15, App.

¶2 In his Petition, Corder alleges, among other things, the following facts. He was employed by OMRF from 1986 until his "termination effective July 14, 1994." Since 1988, he had been Head of Clinical Pharmacology, and had served as the Principal Investigator (PI) for various projects funded by research grants. He further alleges his employment was subject to a contract of employment, renewed annually on or before July 1st. In July 1994, Corder was first advised by his supervisor, Dr. William Thurman (Thurman), that he was being terminated effective September 15, 1994, and then later, on July 14, 1994, was told his termination would be effective August 1, 1994. On that July 14th, he was required to turn over his keys and passes, and was thereafter denied access to files, fixtures and equipment. Thurman orally assured Corder that after his termination all grants, studies, and equipment would be transferred to Corder as PI, but no such transfer had been made.

¶3 Corder asserted causes of action for breach of employment agreement; conversion; public policy; tortious interference with economic advantage; intentional infliction; breach of implied, expressed and oral contract; and breach of constructive trust and fiduciary obligation. Corder further asked the trial court for appointment of an administrator and an accounting in relation to certain grant monies, equipment and supplies. Corder then requested damages, equitable and injunctive relief.

¶4 OMRF moved for summary judgment. The trial court granted OMRF's motion with specific findings and holdings as to each of Corder's causes of action. The trial court found [1] there was no evidence to support the existence of a written employment contract, [2] Corder had no ownership interests in the research grants which were the subject of the alleged conversion, [3] Corder failed to present evidence of a well-recognized specific public policy violated by OMRF, [4] the tortious interference claims were based upon Corder's unsupported assertion of ownership interest in the research grants, [5] Corder's other claims of breach of contract were based on oral contracts or agreements and enforceability was precluded by the Statute of Frauds, [6] OMRF's conduct was not outrageous as a matter of law and could not support Corder's claim for intentional infliction of emotional distress, and [7] OMRF owed no fiduciary duty to Corder.

¶5 On appeal, Corder contends the trial court erred in each of the foregoing holdings. If, in fact, the trial court erred as to *any* of its holdings on Corder's claims, summary judgment was erroneous. Summary judgment is appropriate where it appears there is no substantial controversy as to any material fact, and that a party is entitled to judgment as a matter of law. *First State Bank v. Diamond Plastics*, 1995 OK 21, 891 P.2d 1262 (Okla.1995). All inferences to be drawn from the underlying facts will be reviewed in the light most favorable to the party opposing the motion for summary judgment. *Diamond Plastics*, at 1266.

## BREACH OF EMPLOYMENT CONTRACT

¶6 Where an employee has no written contract, and employment is for an indefinite term, it is terminable at will by either party at any time with or without cause.

*Breshears v. Moore,* 1990 OK CIV APP 8, 792 P.2d 91. OMRF's Vice–President for Business Affairs states in his affidavit that Corder was not employed under a written contract at any time. Corder, on the other hand, testified in his deposition he was hired under a written contract for one year which was extended by annual reappointment letters.

¶ 7 Other than Corder's deposition testimony, we find no evidence of a written employment contract in the record. It is difficult to tell if the written contract about which Corder testified is the collection of memoranda submitted with his response to the motion for summary judgment, or if he is asserting there is some other document or documents constituting the contract. If either event, Corder fails to support his contention.

¶ 8 Corder may not rely on the allegations in his pleadings or the bald contention that facts exist to defeat a motion for summary judgment. *Culpepper v. Lloyd,* 1978 OK 90, 583 P.2d 500. By statute, the original written contract is required to prove its contents, unless Corder can prove an exception applies. 12 O.S.1991 § 3002. He has not asserted any exception applies. Therefore, the existence of Corder's asserted contractual employment rights must be established by the documents in the record. The documents are insufficient for that purpose.

¶ 9 Corder attached a number of documents in support of the purported contract. The documents are various letters and memoranda from Thurman to Corder, dated from January 1986, when Corder was notified of his appointment as an Affiliate Member of OMRF, to February 1988, when the Clinical Pharmacology Program was designated a full research program. While some of these letters and memoranda do mention salary and working conditions, none set forth a definite term of employment.

¶ 10 The remaining memoranda, dated from 1990 to 1993, are annual statements of salary and benefits for the upcoming fiscal year. Again, none of these memoranda provide for a definite term of employment. Even where there is a written employment contract, which provides for an annual rate of compensation but makes no provision for duration of the employment, the contract is not for one year, but is terminable at will by either party. *Singh v. Cities Service Oil Co.,* 1976 OK 123, 554 P.2d 1367. These annual statements are not reappointment letters, but merely set forth Corder's prospective salary and benefits, *if* neither he nor OMRF chose to terminate the employment relationship. The trial court correctly held there was no evidence to support the existence of an employment contract which was *not* terminable at will.

## CONVERSION

¶ 11 "[I]n an action for conversion, the linchpin issue to be resolved is ownership. Conversion is the exercise of dominion over property in defiance or exclusion of the owner's rights." *Brown v. Oklahoma State Bank & Trust Co. of Vinita,* 1993 OK 117, 860 P.2d 230. Corder alleges OMRF converted "research funding, materials, grants, aids and equipment" which belonged to him and should have been transferred to him upon termination. The trial court found Corder had no ownership interest in the contested property and we agree.

¶ 12 The documents of record establish the research grant agreements were between OMRF and the funding grantor. Contrary to Corder's contention, there is no evidence he was a party to any such agreement. While Corder may have signed agreements, he did so acting for OMRF is his capacity as Head, Clinical Pharmacology. Compensation for the research was paid to OMRF, not Corder, and the confidentiality requirements were expressly imposed on OMRF.

¶ 13 As between OMRF and the research grantor, the grant agreement provides all property rights in "inventions, discoveries and technology", and "data engendered by performance of the services", is the sole and exclusive property of the grantor. As between OMRF and Corder, their respective rights in intellectual property resulting from the grant studies are set forth in an Intellectual Property Agreement executed by all OMRF employees. The Agreement,

which incorporates a comprehensive policy statement, is expressly executed as a condition of employment and in consideration of employment. In essence, the Agreement and policy statement assign to OMRF, except as specifically excepted, "every discovery, composition, computer program, data base, process, design literary work, . . ., and other item of intellectual property conceived, reduced to practice, made or created", by the employee in his professional activities with OMRF. Corder claims no exception to application of the Agreement in his case. In view of the foregoing, we find no ownership interest by Corder in any of the grants, funding, equipment purchased with grant funding, or intellectual property developed during the grant studies. In the absence of some showing of ownership interest, Corder's conversion claim must fail.

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

¶ 14   In *Burk v. K–Mart Corp.*, 1989 OK 22, 770 P.2d 24, the Supreme Court recognized a *limited* public policy exception to the general rule that, in the absence of a contract to the contrary, an employer may discharge an employee at will "for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong." *Prince v. St. John Medical Center*, 1998 OK CIV APP 92, 957 P.2d 563 (Citing and quoting *Burk*). The *Burk* Court recognized an actionable tort "where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy."

¶ 15   In asserting what he claims to be a clear and compelling public policy here, Corder cites *Hall v. Farmers Ins. Exchange*, 1985 OK 40, 713 P.2d 1027, where the Supreme Court held an agent may recover from a principal where the principal has, in bad faith, discharged the agent to avoid payment of benefits already earned by the agent. Even if *Hall* does establish the requisite clear and compelling public policy, Corder can not show a right of recovery under it.

¶ 16   Corder questions whether OMRF terminated him "in order to secure and maintain over $640,000.00 in research grants and funding, all of which [he] secured." We have held above Corder has shown no ownership rights in the research grants and funding. Thus, the grants and funding are not benefits already earned by Corder under *Hall*. Additionally, we note OMRF's actions in regards to the grants and funding were inconsistent with an intention to deny Corder anything. While OMRF had no obligation to do so, it wrote each of the active funding sponsors and gave them the option of transferring the research to Corder's new location. Four of the sponsors chose to go with Corder and four chose to keep the grants at OMRF. OMRF was doing no more than the sponsors directed. Corder has shown no right of recovery under this claim.

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AND PROSPECTIVE BUSINESS ADVANTAGE

¶ 17   The trial court's holding was based upon finding these claims were grounded upon Corder's claimed, but unsubstantiated, ownership interest in the research grants. We agree. Although there is some controversy regarding the exact nature of Corder's tortious interference claim, the result is the same. Corder claims he had offers of employment which "collapsed" when OMRF would not agree to transfer all grants and funding to the new places of employment. In this respect, without laying out and discussing all the elements of tortious interference, we need only refer to our holding above that Corder had no ownership interest in the grants which would entitle him to transfer. Because OMRF had no duty to transfer the grants, it is of no consequence that its decision not to do so may have been intentional. *See, Del State Bank v. Salmon*, 1976 OK 42, 548 P.2d 1024. Further, OMRF's offering the option of transferring to grantors obviates a finding that its decision was made maliciously. We note again some of the grants were transferred and that Corder obtained similar employ-

ment. Corder has shown no basis for his claim of tortious interference.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

¶ 18   In *Eddy v. Brown*, 1986 OK 3, 715 P.2d 74, the Court set out the following rules regarding the tort of intentional infliction of emotional distress, also known as outrage:

> It is the trial court's responsibility initially to determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to meet the § 46 [Restatement of Torts] standards. Only when it is found that reasonable men would differ in an assessment of this critical issue may the tort-of-outrage claim be submitted to a jury.
>
> . . . .
>
> Conduct which, though unreasonable, is neither "beyond all possible bounds of decency" in the setting in which it occurred, nor is one that can be "regarded as utterly intolerable in a civilized community," falls short of having actionable quality. Hurt feelings do not make a cause of action under the tort-of-outrage rubric. (Emphasis in original).

¶ 19   The actions of which Corder complains pertain mainly to the manner in which OMRF denied his request to transfer the research grants, funding and equipment, and how he was denied access to research files. More specifically, he asserts he was offended when "someone of [his] stature" was informed by the OMRF's business manager that grant money was not going to be transferred, and Thurman then "froze" the grants. Also, he was required to turn in his keys, publicly collect all keys from "his" employees, and his clinic was padlocked at nighttime and weekends.

¶ 20   Corder also notes, however, without seeming to acknowledge its significance, that he was stopped by OMRF security guards at 11:00 PM on July 12, 1994, while removing ten boxes of records from OMRF. This was after he had been made aware of OMRF's decision regarding transfer of the studies. OMRF took its restrictive actions against Corder after this occurrence. Corder's contention that OMRF's actions were "extreme and outrageous" have no merit. If Corder was embarrassed and humiliated, it appears more the result of his own ill-considered conduct than any action by OMRF.

## BREACH OF IMPLIED, EXPRESSED AND ORAL CONTRACT

¶ 21   In his Petition, Corder alleged this breach was "by virtue of acts, promises and assurances made . . . regarding the transferring of all materials and research funding, which have been continually and consistently refused by" OMRF. The trial court found any such agreements were oral and enforceability was precluded by the Statute of Frauds. Our Statute of Frauds, 15 O.S.1991 § 136, provides, in relevant part:

> The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent:
> 1.   An agreement that, by its terms, is not to be performed within a year from the making thereof.
>
> . . . .

¶ 22   Corder contends he and Thurman entered into an oral agreement, in February 1987, that OMRF would cooperate in the transfer of any grants into and out of OMRF. Corder further contends this agreement was a part of his employment agreement. If it was part of the employment agreement, it is clear from a reading of the record in its entirety the parties intended the employment agreement not to be performed within a year from its making. In reality, the employment agreement, whatever its form and terms, had been in existence for six or more years at the time it was terminated. The agreement would thus come within the Statute of Frauds and would be unenforceable. *Western Star Mill Co. (Gooch Feed Mill Division) v. Burns*, 1956 OK 327, 305 P.2d 564, 570.

¶ 23   Additionally, even if there was a binding agreement, the record evidences OMRF did, in fact, cooperate in the transfer of grants. OMRF allowed the sponsors to decide if they wanted to transfer the

grants. Corder had no legal authority to force the sponsors to transfer the grants to his new location, although some chose to do so. Thus, if there was an agreement, OMRF complied. Finally, Corder's contention he had an *oral* contract with OMRF to transfer the grants, and this agreement was part of his employment contract, is inconsistent with his contention he had a *written* employment contract with OMRF. The writings he contends make up a written employment contract make no mention of transfer of grants. Standing alone, an agreement by OMRF to transfer the grants would impose no enforceable obligation on OMRF because no consideration flows to OMRF from such agreement. 15 O.S.1991 § 106. OMRF possesses the rights to the grants and no benefit would be conferred on OMRF by its agreement to transfer them. For any of the foregoing reasons, Corder's contention he had an agreement with OMRF for transfer of the grants has no merit.

### BREACH OF CONSTRUCTIVE TRUST AND FIDUCIARY OBLIGATION

¶ 24 Although the trial court found OMRF owed no fiduciary duty to Corder, and Corder questions that determination on appeal, it appears Corder abandoned this claim in the trial court. Corder not only failed to present evidentiary material in support of his claim, he did not even submit argument or legal authority on this point. As we held above, Corder may not rely solely on the allegations in his pleadings, or the bald contention that facts exist, to defeat a motion for summary judgment. *Culpepper v. Lloyd,* 1978 OK 90, 583 P.2d 500, 502. In the absence of record to establish the contrary, we will presume the trial court correctly granted summary judgment on Corder's claim for breach of constructive trust and fiduciary obligation.

The trial court's judgment is AFFIRMED.

ADAMS, J., and BUETTNER, P.J., concur.