1998 OK CIV APP 92

**Carrie PRINCE, Plaintiff/Appellant,**

v.

**ST. JOHN MEDICAL CENTER, Defendant/Appellee.**

**No. 89173.**

Court of Civil Appeals of Oklahoma, Division No. 3.

April 14, 1998.

Certiorari Denied June 24, 1998.

Brian E. Duke, Tulsa, for Plaintiff/Appellant.

Kathy R. Neal, Michael C. Redman, Tulsa, for Defendant/Appellee.

## OPINION

ADAMS, Judge.

¶1 Carrie Prince worked as a nurse for St. John Medical Center (Hospital) in its newborn nursery. Hospital fired Prince for violation of Hospital's policies upon complaints received that Prince had allegedly been observed demonstrating rough care, using foul language, and exhibiting inappropriate conduct towards newborn babies. Prince denied the allegations and sued Hospital for defamation, defamation from compelled self-publication, wrongful discharge in retaliation for whistle-blowing activities, and breach of an implied contract.

¶2 Prince withdrew all of her allegations except those relating to wrongful discharge, claiming that under *Burk v. K–Mart Corp.,* 1989 OK 22, 770 P.2d 24, she was improperly terminated for reporting hospital violations of clearly mandated public policies. Hospital moved for summary judgment, contending Prince had not identified a clear mandate of public policy which Hospital frustrated by terminating her as required for an action under *Burk v. K–Mart.* Prince responded, arguing that her evidentiary material raised questions of fact concerning whether she was fired for reporting violations of two clearly mandated expressions of public policy. The trial court sustained Hospital's motion, filing a judgment denying Prince's claim, and Prince filed this appeal.

¶3 In addressing Prince's claim that summary adjudication was inappropriate, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm if there is no genuine issue as to any material fact and Hospital was entitled to judgment as a matter of law. *Perry v. Green,* 1970 OK 70, 468 P.2d 483. All inferences and conclusions to be drawn from the evidentiary materials must be viewed in a light most favorable to Prince. *Ross v. City of Shawnee,* 1984 OK 43, 683 P.2d 535. We are limited to the issues actually presented below, as reflected by the record which was before the trial court rather than one that could have been assembled. *Frey v. Independence Fire and Casualty Company,* 1985 OK 25, 698 P.2d 17. In this context, Prince argues that the trial

court erred in failing to find she stated a claim for wrongful termination for whistleblowing under *Burk v. K–Mart*.

¶ 4 In *Burk v. K–Mart*, the Court recognized a limited public policy exception to the general rule that, in the absence of a contract to the contrary, "an employer may discharge an employee for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong." *Burk v. K–Mart* 1989 OK 22, ¶ 5, 770 P.2d at 26. According to *Burk v. K–Mart*, a discharge which was "contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law," gave rise to an action in tort against the employer. *Burk v. K–Mart*, 1989 OK 22, ¶ 17, 770 P.2d at 28. This action for discharge could arise from termination based upon "[1] refusing to act in violation of an established and well-defined public policy or [2] for performing an act consistent with a clear and compelling public policy." *Burk v. K–Mart*, 1989 OK 22 ¶ 19, 770 P.2d at 29. However, in light of the vague meaning of public policy and the legislature's primary role in formulating it, *Burk v. K–Mart* directed the exception to be tightly circumscribed, and left the determination to the courts as a matter of law.

¶ 5 Thus, as a predicate to suit under *Burk v. K–Mart*, Prince was required to establish violation of a clearly mandated public policy. To this end, Prince claimed that her termination resulted from whistle-blowing regarding safety and security issues. Arguing against summary judgment, she cited two claims for clearly compelling public policy, Hospital's alleged violation of 63 O.S. 1991 § 938, and Hospital's lack of reasonable care under case law.

■ ¶ 6 Prince argues that there is a fact question concerning whether she was terminated, at least in part, because of comments she made to her supervisor and a co-worker concerning the circumstances surrounding the death of a child. According to Prince's view of the facts, the child, who had been doing fine in the nursery, was taken to its mother to nurse, and Hospital staff members were later called to the mother's room to discover the child not breathing and without heart sounds, and the child was ultimately pronounced dead.[1] Appropriate authorities were notified, and they investigated. Some time later, Prince learned that the mother had acted strangely prior to and during the incident and had possibly been suffering from some symptoms of a mental disorder. She expressed to the co-worker and her supervisor that those facts should have been reported to the investigators.[2] According to Prince, Hospital's firing her for urging such a report contravenes the clear public policy expressed in 63 O.S.1991 § 938.

¶ 7 Section 938 requires the Medical Examiner to investigate all human deaths listed in the section, including "deaths under suspicious, unusual or unnatural circumstances." Although § 938 clearly requires the State Medical Examiner to investigate deaths covered by that section, it imposes no right or obligation upon anyone else. Prince's complaints concerning reporting additional information did not relate to actions which would violate the clearly expressed terms of § 938, and this incident cannot form the basis of relief under *Burk v. KMart*.

■ ¶ 8 Prince additionally argues that Hospital terminated her, at least in part, because she expressed concerns about alleged Hospital practices which she says threatened safety and security, implicating Hospital's duty of ordinary care to patients and herself as established by decisional law. Prince contends she expressed concern about several individual events in this regard, *i.e.*, (1) the actions of a fellow hospital employee who did not request immediate medical assistance in the death of the minor child, (2) being scheduled as the only nurse on duty in the newborn nursery from 11:00 p.m. to 7:00 a.m., and (3) being scheduled as a charge nurse without NRP certification. Prince suggests these actions violated Hospital policy. However, violations of internal policies

---

1. The actions by a particular staff member in this situation and Prince's reaction to that are discussed subsequently when dealing with Prince's safety and security concerns.

2. At least in this record, Prince produced no evidentiary material suggesting that these alleged facts had not been reported to the investigators.

of a private employer alone are insufficient for recovery under *Burk v. K–Mart*, because the discharge must be "contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law." *Burk v. K–Mart*, 1989 OK 22, ¶ 17, 770 P.2d at 28.

¶ 9 Similarly, the isolated instances in this record do not support the conclusion Hospital's alleged failures to correct such alleged deficiencies would violate a clearly mandated public policy. Although we agree that decisional law has clearly placed a duty of care on Hospital, what that duty entails in a particular circumstance is not as clear. The lack of evidence that the fellow employee's action in any way contributed to the child's death, and the lack of any complication or indication of the need for more nurses or NRP certification, does not lead us to the conclusion that these individual acts are serious or pervasive enough to raise Hospital's obligation of ordinary care in their commission to the level of a clear mandate of public policy, beyond allegations of isolated acts of mere negligence.[3]

¶ 10 Similarly, we cannot conclude that Prince's internal complaints about Hospital's alleged failure to report to law enforcement authorities the possible history of mental illness of the mother, and the two incidents in which individuals, posing as relatives, attempted to remove babies from the newborn nursery, implicate a clear mandate of public policy. Prince challenged the alleged failure to report, not complicity in the underlying crimes committed by others. Prince provided no basis to conclude reporting was her right or Hospital's obligation. There was no explicitly protected activity sufficient to give rise to an attempt to seek vindication of a legal right on her behalf, or violation of an obligation on Hospital's behalf. We recognize Prince's alleged complaints may have been well-motivated and are perhaps even to be generally encouraged, but they implicate no clearly mandated public policy adopted by the Legislature or the courts. ˙

¶ 11 The facts revealed by the evidentiary material presented by the parties, considered in the light most favorable to Prince, and all reasonable inferences from those facts are consistent only with the conclusion that none of Prince's complaints related to matters implicating a clearly mandated public policy. Accordingly, we must conclude that she is unable to recover based upon *Burk v. K–Mart.* The trial court's judgment is affirmed.

AFFIRMED.

BUETTNER, P.J., and HANSEN, J., concur.

---

**3.** We need not consider whether other conduct, either in isolation or as continuous, pervasive practice, might give rise to such a conclusion.