No. 88,827

ALISON K. GOODMAN, *Appellant/Cross-appellee*, v. WESLEY
MEDICAL CENTER, L.L.C., *Appellee/Cross-appellant*.

(78 P.3d 817)

*Craig Shultz,* of Law Office of Craig Shultz, P.A., of Wichita, argued the cause and was on the brief for appellant/cross-appellee.

*Lynn D. Preheim,* of Stinson Morrison Hecker LLP, of Wichita, argued the cause and was on the brief for appellee/cross-appellant.

*Curtis J. Waugh* and *Wayne T. Stratton,* of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, were on the brief for *amicus curiae* Kansas Hospital Association.

The opinion of the court was delivered by

GERNON, J.: This is an appeal in a wrongful termination suit brought by Alison K. Goodman against Wesley Medical Center, L.L.C. (Wesley). The trial court granted Wesley's motion for summary judgment.

Goodman appeals, claiming: (1) The trial court did not consider whether Wesley's reason for terminating her was pretextual, (2) there was insufficient evidence to support Wesley's claim that she breached its confidentiality policy, (3) the trial court failed to consider her claim for wrongful demotion, and (4) the trial court erroneously granted summary judgment against her on her issue of implied contract. Wesley cross-appeals the trial court's finding that the Kansas Nurse Practice Act (KNPA), K.S.A. 65-1113 *et seq.,* provided the public policy rules, regulations, or laws as the basis of Goodman's retaliatory discharge claim.

Goodman worked at Wesley in the general float pool and could be assigned to work on any medical or surgical unit or any intensive care unit (ICU) at Wesley. Her position paid more because of the flexibility and different levels of training required.

Goodman, on occasion, complained about staffing and at times refused to accept patient assignments. As a result, other nurses complained about Goodman, and several of the unit managers requested that she not be assigned to their units. Eventually, Good-

man was offered a position in the ICU float pool. An ICU float nurse could be assigned in any ICU in the hospital but not in the medical or surgical units. Less flexibility was required for nurses permanently assigned to the ICU float pool, so they were paid less than general float pool nurses. Goodman agreed to accept the restricted assignment, but did so under protest.

In May 2000, Wesley was a defendant in a lawsuit alleging negligence due to understaffing. Goodman had not been involved in the medical care of the patient involved, Shirley Keck. Nevertheless, Keck's attorney, Brad Prochaska, contacted Goodman after having heard that she might be able to substantiate a claim of understaffing at Wesley.

Goodman met with Prochaska, agreed to be a witness for him, gave him Wesley documents which she contended would substantiate the claim of understaffing, and asked his advice regarding her recent assignment to the ICU float pool, which she considered to be a demotion. The documents provided by Goodman to Prochaska included names and treatment information for Wesley patients other than Keck. Prochaska attached the documents from Goodman to a pleading in the Keck case without redacting the other patients' names or treatment information.

Goodman's superiors at Wesley asked her if she had provided the documents to Prochaska. Goodman refused to respond directly, stating that she "did nothing wrong." Goodman was terminated for breaching Wesley's policies concerning patient confidentiality.

Goodman sued Wesley, claiming that she had been terminated in retaliation for reporting Wesley's alleged unsafe nursing practices. The trial court granted Wesley's motion for summary judgment, concluding that the KNPA provides the public policy rules, regulations, and laws for any retaliatory discharge claim Goodman might have had.

## BASIS FOR TERMINATION

Goodman first argues that the trial court erred in its ruling because it did not consider whether Wesley's basis for terminating her was pretextual.

The trial court specifically found: "Goodman failed to establish a genuine issue of material fact on her claim that Wesley's decisions regarding her employment were pretext for a retaliatory motive, and thus plaintiff's claims of retaliation are dismissed." Wesley argues that Goodman failed to establish a prima facie case for retaliatory discharge. Wesley cross-appeals the trial court's decision that the KNPA establishes rules, regulations, and law which sufficiently support Goodman's alleged whistleblowing. In the alternative, Wesley argues that Goodman failed to raise any issues of material fact regarding Wesley's motive for her termination.

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

Kansas follows the common-law employment-at-will doctrine, which allows employers to terminate employees for good cause, for no cause, or even for the wrong cause. To prevail on a retaliatory discharge claim, an employee must demonstrate that he or she falls within one of the exceptions to the employment-at-will doctrine. *Bracken*, 272 Kan. at 1275. One of those exceptions is termination for whistleblowing. *Palmer v. Brown*, 242 Kan. 893, 900, 752 P.2d 685 (1988).

To establish a retaliatory discharge claim for whistleblowing, a plaintiff has the burden of proving the following elements by clear and convincing evidence:

"[A] reasonably prudent person would have concluded the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; the employer had knowledge of the employee's reporting of such violation prior to discharge of the

employee; and the employee was discharged in retaliation for making the report." *Palmer*, 242 Kan. at 900.

In addition, the employee must prove that any whistleblowing was done in good faith based on a concern regarding the wrongful activity reported rather than for a corrupt motive like malice, spite, jealousy, or personal gain. 242 Kan. at 900.

The employee must first establish a prima facie case. If that is done, the employer then bears the burden of producing evidence that the employee was terminated for a legitimate nondiscriminatory reason. If that takes place, the burden then shifts back to the employee to produce evidence that the employer's motives were pretextual. To avoid summary judgment, the employee must assert specific facts disputing the employer's motive for termination. *Bracken*, 272 Kan. at 1276.

### *Cross-appeal*

Before analyzing Goodman's first issue, we must consider Wesley's cross-appeal regarding Goodman's claim that she was reporting violations of the KNPA.

Goodman contends that she was reporting violations pursuant to K.S.A. 65-1120(a)(3), which provides that a nursing license can be revoked or suspended if the nurse is found to have committed an act of professional incompetency as defined by K.S.A. 65-1120(e).

K.S.A. 65-1120(e) defines professional incompetency as:

"(1) One or more instances involving failure to adhere to the applicable standard of care to a degree which constitutes gross negligence, as determined by the board;

"(2) repeated instances involving failure to adhere to the applicable standard of care to a degree which constitutes ordinary negligence, as determined by the board; or

"(3) a pattern of practice or other behavior which demonstrates a manifest incapacity or incompetence to practice nursing."

Wesley argues that the KNPA is not specific enough to establish clear public policy rules, regulations, or law as the basis for a retaliatory discharge claim because it refers to an undefined standard of care that requires a factual determination by the Kansas State Board of Nursing.

Several Kansas cases support Wesley's claim that whistleblowing must be based on violations of specific and definite rules, regulations, or laws. See *Connelly v. Kansas Highway Patrol*, 271 Kan. 944, 946, 26 P.3d 1246 (2001) (involving reports from Kansas Highway Patrol officers of violations of highway motor carrier inspection laws); *Prager v. Kansas Dept. of Revenue*, 271 Kan. 1, 44, 20 P.3d 39 (2001) (reporting violation of Kansas taxation statutes); *Flenker v. Willamette Industries, Inc.*, 266 Kan. 198, 199, 210, 967 P.2d 295 (1998) (considering OSHA violations for machine safety and holding that plaintiff could maintain a state-law tort claim for retaliatory discharge because the federal OSHA remedy was inadequate); *Palmer*, 242 Kan. at 899 (recognizing the tort of retaliatory discharge for reporting Medicaid fraud); *Moyer v. Allen Freight Lines, Inc.*, 20 Kan. App. 2d 203, 208, 885 P.2d 391 (1994) (denying a directed verdict on trucker's claim that she was fired for reporting equipment failures in violation of Department of Transportation regulations).

Wesley also relies on *Aiken v. Business and Industry Health Group, Inc.*, 886 F. Supp. 1565 (D. Kan. 1995), and *Prince v. St. John Medical Center*, 957 P.2d 563 (Okla. App. 1998). Wesley's reliance on *Prince* is misplaced. In *Prince*, a nurse claimed that she was terminated because she told a coworker and her supervisor that they should have reported additional facts to investigators concerning the death of an infant in the hospital. The nurse claimed that the failure to report was a violation of an Oklahoma statute requiring the medical examiner to investigate all human deaths. The *Prince* court held that the statute in question did not impose an obligation on anyone other than the medical examiner and, thus, could not support the nurse's claim for relief. 957 P.2d at 565. The *Prince* case can be distinguished from this case because it alleged the violation of a statute with specific requirements, contrary to Wesley's theory that the KNPA's provisions are vague, factually-dependent standard-of-care requirements rather than specific requirements.

*Aiken*, however, is instructive for this case. In *Aiken*, a physician claimed that he was terminated because he refused to put the employer's economic interests ahead of his patient's interests. The

doctor claimed that compliance with the employer's treatment policies would have forced him to violate professional competency requirements pursuant to the Kansas Healing Arts Act and the Hippocratic oath. Noting that the Kansas Supreme Court had not addressed the public policy issue, the federal district court refused to expand the categories of rules, regulations, or law that are recognized grounds for retaliatory discharge claims. The *Aiken* court's decision was based on the doctor's failure to show that his actions were "protected by or in furtherance of a clear mandate of Kansas public policy." 886 F. Supp. at 1573. The *Aiken* court noted that there was no evidence, other than the plaintiff's own personal belief, that the defendant's polices, as expressed and implemented, fell below the standard of care. 886 F. Supp. at 1574.

The KNPA requires nurses to adhere to the applicable standard of care, which turns on the facts in each case. The doctor in *Aiken* failed to establish a causal connection between the employer's policies and a violation of the standard of care. This is precisely the situation before us. Goodman has failed to establish a causal connection between Wesley's alleged understaffing and problems she reported. Any causal connection is based upon Goodman's opinion only. She admits that her opinion may not be the same as the opinions of other Wesley employees.

It would be both troublesome and unsettling to the state of the law if we were to allow a retaliatory discharge claim to be based on a personal opinion of wrongdoing. Such a holding, under these circumstances, would effectively do away with the employment-at-will doctrine, which has become a part of Kansas public policy.

Public policy cannot be determined on a subjective basis. Instead, public policy " 'should be so thoroughly established as a state of public mind so united and so definite and fixed that its existence is not subject to any substantial doubt.' " *Palmer*, 242 Kan. at 897 (quoting *Noel v. Menninger Foundation*, 175 Kan. 751, Syl. ¶ 4, 267 P.2d 934 [1954]).

Goodman cites *Kirk v. Mercy Hosp. Tri-County*, 851 S.W.2d 617, 622 (Mo. App. 1993), which held that the Missouri Nursing Practice Act provided the rules, regulations, or laws necessary for the basis of a retaliatory discharge action. In *Kirk*, a nurse assessed

a patient and determined that the patient had toxic shock syndrome. When the patient's doctor did not respond, the nurse complained to her supervisor, who told the nurse to " 'document, report the facts and stay out of it.' " 851 S.W.2d at 618. After the patient died, the nurse offered to provide medical records to the deceased patient's family.

The *Kirk* decision is substantially different from the facts in the case before us. In *Kirk*, the nurse was reporting specific incidents of alleged negligence to the family of a deceased patient. Here, Goodman's information was not related to a patient who she had provided care for and who was the subject of the lawsuit.

To support a retaliatory discharge claim, the public policy must be " 'so definite and fixed that its existence is not subject to any substantial doubt.' " See *Palmer*, 242 Kan. at 897. Because the KNPA does not provide definite or specific rules, regulations, or laws, it cannot be the basis for a retaliatory discharge claim. Without a clear mandate of public policy as a foundation for Goodman's claims, she cannot establish the first element in a retaliatory discharge action—that a reasonably prudent person would have concluded that her employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare. See *Palmer*, 242 Kan. at 900.

Wesley further argues that retaliatory discharge claims under the KNPA are precluded by the Kansas Risk Management Act (KRMA), K.S.A. 65-4921 *et seq.*, for two reasons. First, mandatory reporting under the act will give all nurses causes of action for retaliatory discharge. Second, the KRMA provides an adequate statutory remedy.

The KRMA requires health care professionals to report any incident that "[i]s or may be below the applicable standard of care and has a reasonable probability of causing injury to a patient" or "may be grounds for disciplinary action by the appropriate licensing agency." K.S.A. 65-4921(f); see K.S.A. 65-4923. K.S.A. 65-4928 protects health care providers from discharge or discrimination for such mandatory reporting.

In *Flenker*, 266 Kan. 198, this court considered whether a statutory remedy precluded filing a common-law tort action for retal-

iatory discharge. The *Flenker* court stated that an adequate statutory remedy precludes a common-law retaliatory discharge claim but determined that the OSHA statute in question did not provide an adequate remedy and permitted the common-law claim. 266 Kan. at 209-10. The *Flenker* court found the OSHA statutory remedy inadequate because the Secretary, not the employee, decided whether to pursue an action on behalf of the employee. 266 Kan. at 206. The court was concerned about the limitation created by the Secretary's discretion, which could be influenced by such things as budget constraints and political pressure. 266 Kan. at 206.

In *Prager v. Kansas Dept. of Revenue*, 271 Kan. at 49-50, the court applied the rule from *Flenker* but determined that the Kansas Whistleblower Act was an adequate remedy for state employees. The *Prager* court focused on the employee's control over his or her statutory claim, even though the statute imposed some procedural limitations. 271 Kan. at 49-50.

To determine whether the KRMA precludes a common-law claim for retaliatory discharge, this court must determine whether the statutory remedy in K.S.A. 65-4928 is adequate. K.S.A. 65-4928(b) provides:

"Any employer who violates the provisions of subsection (a) shall be liable to the aggrieved employee for damages for any wages or other benefits lost due to the discharge or discrimination plus a civil penalty in an amount not exceeding the amount of such damages. Such damages and civil penalty shall be recoverable in an individual action brought by the aggrieved employee. If the aggrieved employee substantially prevails on any of the allegations contained in the pleadings in an action allowed by this section, the court, in its discretion, may allow the employee reasonable attorney fees as part of the costs."

K.S.A. 65-4928 does not suffer from the same limitations as those found in *Flenker* and *Prager*. It gives an employee full authority to decide whether to pursue a cause of action in the state courts, while applying the same procedural rules as a common-law cause of action. In addition, K.S.A. 65-4928 expands the common-law remedy by permitting punitive damages and attorney fees. Because K.S.A. 65-4928 enhances rather than restricts the common-law remedy, it provides an adequate statutory remedy and precludes common-law retaliatory discharge claims for reporting

standard of care issues in medical care facilities. With a statutory remedy available, the KNPA does not need to provide a public policy basis to support retaliatory discharge claims in the health care industry. Accordingly, the trial court erred when it concluded that the KNPA provided an adequate public policy exception to the employment-at-will doctrine in Kansas.

Our conclusion regarding the KNPA requires us to consider Goodman's argument that there is disputed evidence regarding Wesley's motive for terminating her. We are not aided by Goodman's factual allegations disputing Wesley's motive for termination, which are not keyed to the record. Material statements of fact that are not keyed to the record on appeal are presumed to be unsupported. Supreme Court Rule 6.02(d) (2002 Kan. Ct. R. Annot. 34); *State v. Drach*, 268 Kan. 636, 638, 1 P.3d 864 (2000).

The only evidence disputing Wesley's motive for terminating Goodman comes from Goodman's own opinion in her deposition testimony. Goodman testified in her deposition that she had no other evidence other than her own suspicions to back up her claim that Wesley fired her for something other than violating its policy regarding patient confidentiality. She offers no corroborating testimony from other nurses who allegedly told her she was fired because she helped with the *Keck* lawsuit.

There is no evidence in the record that Goodman was terminated for any reason other than her actions in giving confidential documents to Prochaska. The trial court did not err when it dismissed Goodman's claim for retaliatory discharge because Goodman failed to establish a genuine issue of material fact in that regard.

## SUFFICIENCY OF THE EVIDENCE

Goodman next argues that there was insufficient evidence to conclude that she breached Wesley's confidentiality policy. Indeed, Goodman argues that she did not breach Wesley's confidentiality policy when she provided the documents to Prochaska because the documents were communications between herself and Prochaska, her attorney. Goodman argues that such communications were protected by the attorney/client privilege.

Goodman's claim of attorney/client privilege belies a lack of understanding of what that privilege entails. Goodman has no standing to claim a privilege for another person's confidential information or to waive the other person's statutory privilege provided by K.S.A. 65-5602. Goodman fails to offer any legal authority for her arguments. Issues without supporting authority need not be addressed by appellate courts. *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 15, 61 P.3d 68 (2002).

Goodman also argues that she did not breach the confidentiality policy because Prochaska was entitled to the information. Goodman fails to supply, nor are we able to locate, any legal authority to support her proposition that Prochaska was entitled to treatment information about patients who were not related to the *Keck* lawsuit. K.S.A. 65-5602 specifically prohibits the disclosure of confidential information by treatment personnel and requires treatment personnel to claim the privilege on behalf of the patient unless the patient has made a written waiver of the privilege. Goodman has admitted that she did not have any patient's consent for releasing their confidential information to anyone, including an attorney.

Goodman asserts that it must be permissible to speak with an attorney about confidential matters without danger that the conversation will become a breach of confidentiality. This assertion is wholly without foundation in the law.

Goodman further claims that there was no breach of confidentiality because no one saw the documents other than Prochaska. This overlooks the fact that the documents were filed with the district court and that Prochaska saw the documents when he was not involved in treating those patients and did not have a waiver of their confidentiality. Goodman had no authority to share such documents with Prochaska.

## DEMOTION CLAIM

Next, Goodman incidentally raises a claim that the trial court failed to consider her claim for wrongful demotion. Goodman provides no legal argument or authority to support her claim of error and, therefore, this court will not address the issue. See *McCain Foods USA, Inc.*, 275 Kan. at 15.

## IMPLIED CONTRACT

Last, Goodman argues that the trial court erroneously granted Wesley's motion for summary judgment on her claim of implied contract. Applying the standard of review for summary judgment, this court must determine whether Goodman has come forward with any evidence to establish a dispute as to a material fact. See *Bracken*, 272 Kan. at 1275. The only fact Goodman asserts that is keyed to the record is Goodman's supervisor's deposition testimony that an accidental release of confidential patient information would have made a difference in Wesley's considerations. Goodman fails to argue how this fact controverts Wesley's claim that there was no implied contract for employment. Without any argument to establish her claimed error, this court will not consider the issue. See *McCain Foods USA, Inc.*, 275 Kan. at 15.

Affirmed.

ABBOTT, J., not participating.

BRAZIL, S.J., assigned