**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PAUL BERGERSEN,

Plaintiff-Appellant,

v.

SHELTER MUTUAL INSURANCE
COMPANY, SHELTER GENERAL
INSURANCE COMPANY, and
SHELTER LIFE INSURANCE
COMPANY,

Defendants-Appellees.

No. 06-3209
(D.C. No. 05-CV-1044-JTM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY**, and **GORSUCH**, Circuit Judges.

Paul Bergersen appeals the district court's grant of summary judgment in

favor of his former employer Shelter Mutual Insurance Company, Shelter General

Insurance Company, and Shelter Life Insurance Company (Shelter), on his Kansas

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

common law retaliatory discharge claim.  Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

I

Mr. Bergersen's version of the facts and the uncontroverted evidence proffered by Shelter provide the following abbreviated factual scenario. Mr. Bergersen was an at-will multi-line sales agent with Shelter from May 1999 until July 2003, when Shelter terminated him.  His responsibilities included the sale of home, auto, life and other insurance products.  He was also responsible for the fulfillment of administrative obligations, such as maintaining a premium trust fund account, policy and customer files, and the agency accounting system.

In early summer 2002, Mr. Bergersen suspected that Shelter was discriminating against its Hispanic insureds.  In August, Shelter canceled three auto policies of an Hispanic client.  Mr. Bergersen subsequently referred the client to the Kansas Insurance Department (KID).[1]  In November, Mr. Bergersen was contacted by the KID regarding the client's complaint.

In January 2003, Mr. Bergersen anonymously contacted the KID regarding what he believed to be Shelter's violations of state law.  In either January or February, Mr. Bergersen reported to Shelter management his belief that the

---

[1]     The KID is responsible for regulating Kansas's insurance companies to ensure they "comply with insurance laws and regulations."  KID Website, http://www.ksinsurance.org/about/mission.htm.

company was discriminating against its Hispanic insureds. Then, on May 8, Mr. Bergersen filed a formal complaint with the KID claiming that Shelter was discriminating against its Hispanic insureds. Later that month, Shelter's in-house counsel advised Mr. Bergersen in writing that Shelter had investigated his allegations but found no evidence of discrimination. On May 30, Shelter placed Mr. Bergersen on a probation plan, detailing the specific areas in which he was instructed to improve in the next thirty days. On July 1, a little more than seven weeks after Mr. Bergersen formally reported Shelter to the KID, Shelter terminated his employment.

Mr. Bergersen sued Shelter in Kansas state court contending that Shelter discharged him in retaliation for reporting—"blowing the whistle" on—Shelter's discriminatory practices. Shelter removed the case to federal court based on diversity of citizenship and filed a motion for summary judgment. The district court framed the "central issue" as "when did plaintiff engage in protected activity, that being reporting alleged discriminatory practices at Shelter[?]" Aplt. App. at 357. The court acknowledged that the fourth element of Mr. Bergersen's prima facie case (causation) would be much stronger if it were to consider the temporal proximity between his May 8, 2003, formal complaint, and his discharge on July 1, 2003. *See id.* at 358. But the court found that Mr. Bergersen's *earlier* report to management was "the date from which the court [should] measure[] temporal proximity." *Id.* Relying on the earlier report to management, the court

-3-

held the several-month temporal connection between the report and the discharge was insufficient, standing alone, to establish causation. *Id.* at 359.[2] The court held in the alternative that "even if [it] were to find that plaintiff satisfied the requirement[s] of a prima facie case . . . , plaintiff would not ultimately prevail" because he failed to establish that Shelter's motive for terminating him was pretextual. *Id.* at 359-60. Specifically, Mr. Bergersen failed "to present any evidence to rebut . . . performance questions" or to demonstrate "that he responded to his supervisors' concerns." *Id.* at 360. Mr. Bergersen appeals.

II

This diversity action is governed by Kansas's substantive law, "but we are governed by federal law in determining the propriety of the district court's grant of summary judgment." *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016 (10th Cir. 2001). Accordingly, "[w]e review the district court's grant of summary

---

[2] The court went on to observe:

> Besides the temporal connection, plaintiff presents limited evidence of retaliatory discharge. . . . Plaintiff points to [a] sales award and ranking as an agent, but he has not shown that he took steps to correct administrative problems, respond to the concerns expressed by underwriting, or meet the expectations of his supervisors. . . . His supervisors requested to be copied on his e-mails and had to come up with a procedure to deal with his unresponsiveness. . . . [T]here is little or no evidence of satisfactory work performance or supervisory evaluations either before or after he engaged in a protected activity.

Aplt. App. at 359.

judgment de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.
>
> Although the movant must show the absence of a genuine issue of material fact, he or she need not negate the nonmovant's claim. Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof. The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is genuine; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant.

*Simms*, 165 F.3d at 1326 (citations, quotations, and brackets omitted).

"Kansas follows the common-law employment-at-will doctrine, which allows employers to terminate employees for good cause, for no cause, or even for the wrong cause. To prevail on a retaliatory discharge claim, an employee must demonstrate that he or she falls within one of the exceptions to the employment-at-will doctrine." *Goodman v. Wesley Med. Ctr., L.L.C.*, 78 P.3d

817, 821 (Kan. 2003).  Two such exceptions are "termination for whistleblowing," *id.* (citing *Palmer v. Brown*, 752 P.2d 685, 689-90 (Kan. 1988)), and termination for filing a workers compensation claim, *see Bracken v. Dixon Indus., Inc.*, 38 P.3d 679, 682 (Kan. 2002).[3]

Because retaliatory discharge cases are rarely proven by direct evidence, Kansas courts have adopted a burden-shifting approach for analyzing such claims. *See Goodman*, 78 P.3d at 821.  At the first stage, the employee must establish a prima facie case.  *Id.*  To make out a prima facie case, Mr. Bergersen has the "burden of proving by clear and convincing evidence" that:  (1) "a reasonably prudent person would have concluded . . . [Shelter] was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare"; (2) he, in "good faith," reported Shelter's violation "to either [Shelter] management or law enforcement officials"; (3) Shelter "had knowledge of [his] report[]" before it discharged him; and (4) Shelter discharged him "in retaliation for making the report" (*i.e.*, a causal connection exists between the report and the discharge).  *Palmer*, 752 P.2d at 690; *see also Goodman*,

---

[3]        We mention the second exception only to highlight the Kansas Supreme Court's recognition that workers compensation retaliatory discharge actions are fairly similar to whistleblower retaliatory discharge actions.  *Ortega v. IBP, Inc.*, 874 P.2d 1188, 1194 (Kan. 1994) ("Both are tort actions for the same type of conduct of the employer:  firing an employee in retaliation for something the employee has done. . . .  Both exceptions . . . developed to control the actions of employers which violate public policy. . . .  The basis of both . . . is the employer's bad motive in discharging the employee.").

78 P.3d at 821. "Proximity in time between the claim and discharge is a typical beginning point for proof of causal connection." *Rebarchek v. Farmers Co-Op. Elevator*, 35 P.3d 892, 899 (Kan. 2001) (workers compensation case); *see also Boe v. AlliedSignal Inc.*, 131 F. Supp. 2d 1197, 1204 (D. Kan. 2001) ("When evaluating whether causation has been established, Kansas courts look to whether close temporal proximity existed between the whistleblowing activity and the discharge."). Once Mr. Bergersen makes a prima facie case, Shelter "then bears the burden of producing evidence that [Mr. Bergersen] was terminated for a legitimate nondiscriminatory reason." *Goodman*, 78 P.3d at 821. "If that takes place, the burden then shifts back to [Mr. Bergersen] to produce evidence that [Shelter's] motives were pretextual." *Id.* "To avoid summary judgment, [Mr. Bergersen] must assert specific facts disputing [Shelter's] motive for termination." *Id.*

On appeal, Mr. Bergersen first asserts that the district court should have relied on his May 8, 2003, formal complaint filed with the KID because his earlier report to Shelter management was not a protected act. *See* Aplt. Br. at 16-17. Mr. Bergersen misapprehends the law. Both reports constituted protected activity. *See Palmer*, 752 P.2d at 690 (explaining that a whistleblower's report may be "to either company management or law enforcement officials"). But for this very same reason, it was also inappropriate for the district court to "find[] that the earlier date . . . [was] the date from which . . . temporal proximity"

should be measured. Aplt. App. at 358. Rather, in evaluating whether Mr. Bergersen was able to demonstrate a causal connection between a protected act and his termination, the district court was obliged to consider the temporal proximity between *both* of his acts of protected activity and his July termination.

Although the Kansas Supreme Court has not specifically addressed how close together a claimant's report and his termination must be, standing alone, to establish causation, the Court in *Rebarchek*, 35 P.3d at 899, cited with approval *Anderson v. Coors Brewing Co.*, 181 F.3d 1171 (10th Cir. 1999), where we held that twelve weeks, standing alone, was insufficient to establish causation, but that six weeks "may, by itself, establish causation," 181 F.3d at 1179. The facts of this case, then, where just over seven weeks separated Mr. Bergersen's report to the KID and his termination, seemingly fall between two stools. Though we may, in cases where we lack "definitive direction" from the forum state's highest court, seek to predict how that court might rule, *Vanover v. Cook*, 260 F.3d 1182, 1186 (10th Cir. 2001), we need not do so to resolve this case.

Even if Mr. Bergersen had satisfied the causation element of his claim, we agree with the district court's alternative holding that he failed to present evidence that Shelter's stated reasons for his termination were pretextual. To avoid summary judgment at this point, Mr. Bergersen "must assert specific facts disputing [Shelter's] motive for termination." *Goodman*, 78 P.3d at 821. Instead, Mr. Bergersen "submits that the temporal proximity between his report to the KID

and Shelter placing him on probation and ultimately terminating him satisfied his burden." Aplt. Br. at 21. But the Kansas Supreme Court in *Wilkins v. Kmart Corp.*, a Kansas workers compensation retaliatory discharge action, expressly held that: "Temporal proximity is sufficient to establish the causal connection element of a prima facie case, but is not sufficient—standing alone—to raise a genuine issue of pretext." No. 05-4074-SAC, 2006 WL 3333744, at *4 (D. Kan. Nov. 16, 2006) (quotations omitted). Moreover, this court has echoed that sentiment in a variety of related contexts. *See, e.g., Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004) (observing in Title VII retaliation case that "close temporal proximity is a factor in showing pretext, yet is not alone sufficient to defeat summary judgment"); *Anderson*, 181 F.3d at 1180 (holding that absent other evidence, temporal proximity alone did not establish pretext for retaliation under the ADA); *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1397-98 (10th Cir. 1997) (noting that temporal proximity alone does not constitute pretext for retaliatory discharge under the FLSA); *see also Hysten v. Burlington N. Santa Fe Ry.*, 372 F. Supp. 2d 1246, 1257 (D. Kan. 2005) (stating that to the extent that *Foster v. AlliedSignal, Inc.*, 293 F.3d 1187 (10th Cir. 2002), "implies that temporal proximity is sufficient for purposes of the pretext analysis, it would appear to be inconsistent with both prior and subsequent Tenth Circuit opinions"). Thus, we conclude that Mr. Bergersen's claim of temporal proximity is

insufficient, standing alone, to raise a genuine issue of pretext. *See Vanover*, 260 F.3d at 1186.

To be sure, Mr. Bergersen also asserts that pretext can be inferred from the fact that he "won an award in March, 2003," and "in September, 2002, his State Manager told him he was proud of his production." Aplt. Br. at 21. But to avoid summary judgment, Mr. Bergersen must do more than make conclusory assertions about his successes while employed by Shelter. He "must assert specific facts disputing the employer's motive for termination." *Goodman*, 78 P.3d at 821. That Mr. Bergersen received an award, in and of itself and without any further explanation, does not controvert Shelter's legitimate non-discriminatory reasons for terminating him. Similarly, that a superior was "proud" of his performance on a particular day does not, without more, help us overcome Shelter's proffered non-discriminatory reasons for terminating Mr. Bergersen. (Indeed, it appears that at the very time Mr. Bergersen's State Manager complimented his production, the manager also asked to be copied on all correspondence with underwriting and expressed concern about incomplete work. *See* Aplt. Br. at 7 (citing Aplt. App. at 204)).

\* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.

Entered for the Court

Neil M. Gorsuch
Circuit Judge