**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 12, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RANDALL LYKINS,

     Plaintiff - Appellant,

v.

CERTAINTEED CORPORATION;
SAINT-GOBAIN CORPORATION,

     Defendants - Appellees.

No. 12-3308
(D.C. No. 2:11-CV–02133-JTM-DJW)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **EBEL**, and **BACHARACH**, Circuit Judges.

---

    Plaintiff-Appellant Randall Lykins appeals the district court's grant of
summary judgment on his retaliatory discharge claim. Lykins v. CertainTeed
Corp. ("Lykins I"), No. 11-2133, 2012 WL 5471254 (D. Kan. Nov. 9, 2012). He
also appeals the district court's reversal of the magistrate judge's award of
sanctions for discovery abuses by Defendants. Lykins v. CertainTeed, No. 2:11-
cv-02133-JTM-DJW, ECF No. 178 (D. Kan. Nov. 9, 2012), rev'g Lykins v.
CertainTeed Corp. ("Lykins II"), No. 11-2133, 2012 WL 3542016 (D. Kan. Aug.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

16, 2012).  Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm in part and reverse in part.

Background

Mr. Lykins was employed by Defendants-Appellees CertainTeed Corporation and its parent company, Saint-Gobain Corporation, in their Kansas City, Kansas, fiberglass plant for approximately 12 years.  Aplt. Br. 4; Aplt. App. 446.  He worked as both a production supervisor and a shift manager, supervising up to 75 employees at times.  Aplt. Br. 3; Aplt. App. 446.  According to Mr. Lykins, from May to August 2010, he witnessed numerous employees unlawfully handling and disposing of waste materials containing hexavalent chromium: primarily, the improper clean up of spilled electrostatic precipitator pellets and the use of a portable pump—known as the Godwin pump—to pump unfiltered waste water from a drainage area directly into the municipal sewer.  Aplt. Br. 4-11; Aplt. App. 394, 549-51.  It is undisputed that Mr. Lykins reported his allegations to various supervisors at the plant, including plant manager, Eric Schramm, and also raised his concerns during morning production meetings. Aplt. Br. 4; Aplt. App. 394, 557-59.  His complaints were "repeatedly met with indifference and/or hostility."  Aplt. Br. 4.  In addition, Mr. Lykins admitted in deposition testimony that (1) although he took pictures of conditions at the plant, he never showed them to anyone, Aplee. Br. 14; Aplt. App. 400; (2) he wrote down the number of "Kansas EPA" in his day planner, although he never

contacted it or any outside environmental enforcement agency prior to his termination, Aplee. Br. 15; Aplt. App. 377; (3) he received an employee handbook with information about the company's anonymous, 24-hour hotline for employees to report known or suspected company violations; a number he never called, Aplee. Br. 15; Aplt. App. 388; and (4) he never read Defendants' wastewater discharge permit and did not know how much, if any, discharge was allowed; rather, he was "going with his gut" in suspecting that the handling of wastes was unlawful, Aplee. Br. 13; Aplt. App. 386, 393.

On August 16, 2010, Mr. Lykins was given a poor work performance letter that he refused to sign and was told that if he did not sign it, he would be terminated. Aplt. App. 559. The following day, which was also the date of a planned state environmental inspection, Mr. Lykins was called into a meeting with plant management where he voiced his concerns of retaliation for his complaints at the plant, after which he was fired. Aplt. Br. 5.

In March 2011, Mr. Lykins filed his complaint claiming retaliatory discharge for reporting his environmental concerns to upper management. Following discovery, Defendants moved for summary judgment, arguing that Mr. Lykins failed to establish two elements of his prima facie case because he failed to (1) identify any specific laws allegedly violated, and (2) make his reports to any authority higher than the alleged wrongdoers at the plant. Aplt. App. 287. The district court agreed, <u>Lykins I</u>, 2012 WL 5471254, at *6-8, granted summary

judgment in Defendants' favor, and also reversed the magistrate judge's earlier award of sanctions in favor of Mr. Lykins, ECF No. 178.

Discussion

Mr. Lykins argues that (1) he properly established a prima facie case of retaliatory discharge because (a) he did not have to identify any precise statutory violation in his complaints, and (b) he satisfied the higher authority requirement by reporting the violations to the supervisors of those mishandling the waste; and (2) the district court erred in reversing the sanctions award based solely on the grant of summary judgment in favor of Defendants. For the following reasons, we affirm summary judgment on the merits but reverse on sanctions.

A. Retaliatory Discharge

We first address whether the district court erred in granting summary judgment based on Mr. Lykins' failure to establish two of the elements of his retaliatory discharge claim. Though not filed with his brief-in-chief as envisioned by our rules, 10th Cir. R. 27.1(C), Mr. Lykins has filed a motion to certify various issues to the Kansas Supreme Court, arguing that they are of first impression. Lykins v. CertainTeed, No. 12-3308, ECF No. 10080551 (10th Cir. June 10, 2013). We generally decline to certify questions when the movant only requests certification in this court after an adverse district court decision. Zurich Am. Ins.

Co. v. O'Hara Reg'l Ctr. for Rehab., 529 F.3d 916, 926 (10th Cir. 2008).

Moreover, we think the path in this case is "reasonably clear and principled"

based upon extant Kansas law and decline to certify.   See Pino v. United States,

507 F.3d 1233, 1236 (10th Cir. 2007).

We review an order granting summary judgment de novo.  Helm v. Kansas,

656 F.3d 1277, 1284 (10th Cir. 2011).  Summary judgment is appropriate if "there

is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Given a material issue, we

view the evidence and reasonable inferences in the light most favorable to the

nonmoving party.  Ricci v. DeStefano, 557 U.S. 557, 586 (2009).

Under Kansas law, in order to establish a retaliatory discharge claim under

the whistleblower exception to at-will employment, the employee must first make

a prima facie case by clear and convincing evidence that:

> (1) a reasonably prudent person would have concluded that the
> employer or a coworker was engaged in activities that violated rules,
> regulations, or the law pertaining to public health and safety and the
> general welfare; (2) the employer had knowledge that the employee
> reported the violation prior to his or her discharge; and (3) the
> employee was discharged in retaliation for making the report.

Shaw v. Sw. Kan. Groundwater Mgmt. Dist. Three, 219 P.3d 857, 862 (Kan. Ct.

App. 2009) (citing Goodman v. Wesley Med. Ctr., L.L.C., 78 P.3d 817, 821 (Kan.

2003)).

On the first element, the district court held that Mr. Lykins' prima facie

case was insufficient because he "unequivocally admitted" that he did not know any of the details of the plant's discharge permit but was only "going on his gut" that the discharge was unlawful, Lykins I, 2012 WL 5471254, at *6; and, on the second element, Mr. Lykins reported the alleged violations only to the wrongdoers themselves in contravention of Kansas law, id. at *7-8. Because we agree with the second holding, we need not consider the first.

Although the second element requires that the employer have knowledge of the employee's reporting of illegal activity prior to termination, Kansas courts have interpreted this to mean that the employee must "seek to stop unlawful conduct through the intervention of a higher authority, either inside or outside the company." Shaw, 219 P.3d at 863; see also Palmer, 752 P.2d at 690; Fowler v. Criticare Home Health Servs., Inc., 10 P.3d 8, 15 (Kan. Ct. App. 2000) aff'd, 26 P.3d 69 (Kan. 2001). Reporting to a non-complicit higher authority is necessary because "not every workplace dispute over the water cooler on company practices equates to whistleblowing." Shaw, 219 P.3d at 863 (internal quotation marks and citation omitted).

Mr. Lykins argues that he satisfied the "higher authority" requirement because he reported the unlawful conduct to an authority higher than the subordinates committing the improper waste disposal. Aplt. Br. 38. We are not persuaded.

Kansas law makes clear that reporting to a higher authority means taking

actions to stop the illicit activity by reporting it to someone higher than the wrongdoer, either inside the company, if available, or outside the company, when internal channels are unavailing. See Fowler, 10 P.3d at 14-15 (rejecting a whistleblower claim by an employee who refused a supervisor's request to ship a handgun and ammunition in the mail); Shaw, 219 P.3d at 863 (reversing a grant of summary judgment in favor of an employer where the employee reported a supervisor's alleged unlawful conduct to the board overseeing that supervisor); see also Conrad v. Bd. of Johnson Cnty. Comm'rs, 237 F. Supp. 2d 1204, 1268 (D. Kan. 2002) (rejecting a whistleblower claim by a nurse who complained about patient care only to her supervisor, who was responsible for patient-care decisions); Goenner v. Farmland Indus., Inc., 175 F. Supp. 2d 1271, 1280-81 (D. Kan. 2001) (rejecting a whistleblower claim by an employee who complained about the misreporting of a crude oil spill to his supervisor, who was complicit in the misreporting by the refinery's general manager); Boe v. AlliedSignal Inc., 131 F. Supp. 2d 1197, 1204 (D. Kan. 2001) (rejecting a whistleblower claim when an employee refused to sign company letters but upholding the claim based on the employee's reports to other managers and calling the company hotline). Mr. Lykins admits that he never made his reports to anyone outside of plant management, even though he had tools at his disposal to do so, including the employee hotline number. Simply reporting to a higher-level wrongdoer is insufficient.

Mr. Lykins argues that his complaints were addressed to a higher authority, not the wrongdoer, because upper management was ultimately responsible for the wrongful actions of the subordinates. However, Mr. Lykins consistently identified the perpetrators of the wrongdoing as upper management, including in his answer to interrogatories. Aplt. App. 458-460. Fowler addressed a similar situation in which the employee thought that the supervisor's illegal conduct was approved by the company's owner; nonetheless, the Fowler court rejected the claim because the employee did not reach out to law enforcement when company reporting avenues were closed to him. Fowler, 10 P.3d at 15.

Mr. Lykins also relies on Connelly v. State Highway Patrol, 26 P.3d 1246 (Kan. 2001), to argue that a higher authority includes a company's chain of command. Aplt. Reply Br. 20. His reliance is misplaced. The Connelly court found that a state trooper's whistleblowing claim was properly submitted to a jury because the trooper openly denounced and protested to his supervisors the selective enforcement of vehicle load laws, concluding that the trooper's chain-of-command protests were made to "other 'law enforcement officials.'" Id. at 1249-50; 1266. No such reporting to law enforcement—either internally or externally—occurred here.

Mr. Lykins also argues that denying him whistleblower status would be a "direct onslaught" to the public policy considerations in Palmer that protect citizens from reprisal when they uphold health and safety laws because it would

dissuade employees from internal reporting. Aplt. Br. 43; Aplt. Reply Br. 21. While we understand Mr. Lykins' concern, allowing an employee to claim whistleblower protection for simply raising issues with a superior would permit the exception to swallow the "at will" rule. Ordinary dialogue and disagreement between management and employees would become the substance of whistleblowing claims. Obviously, something more is required to differentiate internal dissatisfaction from the protected act of whistleblowing.

Finally, Mr. Lykins argues that the district court erred by making impermissible evidentiary inferences in Defendants' favor and by disregarding his evidence without conducting a sham analysis, as required by Law Co. v. Mohawk Const. & Supply Co., 577 F.3d 1164, 1169 (10th Cir. 2009). Aplt. Br. 33-36, 44. Although Mr. Lykins is correct in noting that the district court "exclude[d] requested facts" in its order, Lykins I, 2012 WL 5471254, at *1, it explained that those facts were not "materially relevant," were unsupported by admissible evidence, or failed to "reflect evidence based on personal knowledge," id. We agree with the district court that Defendants' motion for summary judgment rested primarily on Mr. Lykins' own admissions in deposition testimony. To whom Mr. Lykins made his reports is uncontroverted, and Mr. Lykins offers no evidence that he reported his allegations to anyone else before his termination. Thus, we reject Mr. Lykins' claim that the district court made impermissible inferences or disregarded pertinent facts in reaching its conclusion. Because Mr.

Lykins cannot make the prima facie case on the second element, all other facts are immaterial, and summary judgment is warranted. See Ricci, 557 U.S. at 586.

B.  Discovery Violations

We next address the issue of sanctions.

On August 16, 2012, the magistrate judge responded to a lingering discovery dispute between the parties by granting in part Mr. Lykins' motion to compel, requiring Defendants to produce both testimony and documents from a Rule 30(b)(6) witness. Lykins II, 2012 WL 3542016, at *15. The magistrate judge also awarded Mr. Lykins sanctions—attorneys fees and reasonable expenses in bringing the motion to compel—because (1) Defendant CertainTeed impermissibly instructed its Rule 30(b)(6) witness to not answer questions on certain topics during a deposition,  Lykins II, 2012 WL 3542016, at *3-4; and (2) Defendant Saint-Gobain Corporation failed to produce a Rule 30(b)(6) witness at all, based on its objections to the discovery request, id. at *2-3.  Both Defendants had previously filed formal objections to Mr. Lykins' Rule 30(b)(6) requests, arguing, inter alia, that several of the discovery topics were overbroad, vague, and irrelevant; arguments the magistrate judge rejected. Id. at *2, *5-12.

Defendants sought review of the magistrate's discovery order in district court, arguing in relevant part that sanctions were improper because Defendants justifiably relied on an earlier ruling by the magistrate, Sprint Commc'ns Co.,

L.P. v. Vonage Holdings Corp., No. 05-243, 2007 WL 2333356, at *2 (D. Kan. Aug. 15, 2007), which did not require the filing of a motion for a Rule 26(c) protective order under similar circumstances. Aplee. Supp. App. 665-66. See Epling v. UCB Films, Inc., No. 98-4226-RDR, 2001 WL 584355 (D. Kan. Apr. 2, 2001) (reversing the imposition of sanctions because the party's reliance on unsettled case law was substantially justified). The district court agreed, granting Defendants' motion for review and reversing the magistrate judge's award of sanctions in a text-only docket entry, noting that "under all of the circumstances of the case, including the award of summary judgment, that no sanctions should issue against Defendants." ECF No. 178.[1]

Mr. Lykins challenges the district court's reversal, arguing that it improperly concluded summary judgment rendered sanctions moot because the two issues should have been addressed independently. Aplt. Br. 54. See Murphy v. Klein Tools, Inc., 123 F.R.D. 643, 645 (D. Kan. 1988). For the following reasons, we agree with Mr. Lykins.

Although we review the district court's discovery order for an abuse of discretion, Martinez v. Carson, 697 F.3d 1252, 1256 (10th Cir. 2012), a district court reviews a magistrate judge's order under a clearly erroneous or contrary to

[1] The text-only docket entry constitutes the order. See Administrative Procedures for Filing, Signing, and Verifying Pleadings and Papers by Electronic Means in the United States District Court for the District of Kansas, § II(E)(4) at 16 (D. Kan. 2013). Such entries are used for routine matters. Id.

law standard.[2] <u>Ocelot Oil Corp. v. Sparrow Indus.</u>, 847 F.2d 1458, 1465 (10th Cir. 1988) (citing 28 U.S.C. § 636(b)(1)(A)). The imposition of sanctions is discretionary based on the particular circumstances of the case. <u>See</u> <u>AdvantEdge Bus. Grp. v. Thomas E. Mestmaker & Assoc., Inc.</u>, 552 F.3d 1233, 1236 (10th Cir. 2009).

Here, the magistrate judge imposed sanctions because Defendants instructed a Rule 30(b)(6) witness not to answer questions on specific topics during a deposition and also failed to provided a Rule 30(b)(6) witness at all—finding that both actions violated discovery rules. <u>Lykins II</u>, 2012 WL 3542016, at *3. On appeal, Defendants do not argue that the magistrate misapplied the federal discovery rules. <u>See</u> Aplee. Br. 60-61. Rather, Defendants argue that the district court properly concluded that under all the circumstances, sanctions were not warranted—primarily because Defendants relied on a contrary ruling by the magistrate judge in <u>Sprint</u>, leading to confusion. Aplee. Br. 61. Recognizing that discretion is a fluid concept bounded by a range of reasonableness, we are not persuaded that a district court may substitute its discretion for that of the magistrate judge absent a factual predicate that is clearly erroneous or an application of the law that amounts to legal error.

---

[2] The concurrence and dissent suggests that application of the clear error standard to the magistrate judge's ruling was not raised, and therefore we should decline to reverse on that ground. Obviously, the standard of review is a threshold legal issue which we must consider.

First, a district court does not review a magistrate's sanctions order based on a totality of the circumstances standard.  Rather, clear error must occur, either in fact or in law, Ocelot, 847 F.2d at 1465, neither of which occurred here.  As the magistrate judge noted, Rule 30(c)(2) provides the limited circumstances in which a witness may be instructed not to answer deposition questions: "when necessary to preserve a privilege, to enforce a limitation order by the court, or to present a motion under Rule 30(d)(3)."  Lykins II, 2012 WL 3542016, at *3 (citing Fed. R. Civ. P. 30(c)(2)).  As the magistrate judge explained, because Defendants' objections fell outside of these three exceptions, Defendants were required to limit discovery by seeking a protective order under Rule 26(c), moving to limit the scope of the deposition under Rule 30(d), or moving to limit the extent of discovery under Rule 26(b)(1)(C).  Id.[3]

Second, Defendants' reliance on Sprint is misplaced, even overlooking the weight of authority that must inform a lawyer's judgment.  In Sprint, counsel instructed a Rule 30(b)(6) witness not to answer questions about a certain topic based on its prior written objections.  Sprint, 2007 WL 2333356, at *1-2.  However, the magistrate judge did not specifically address the impropriety of instructing a witness not to answer.  Id. at *3-5.  Instead, the magistrate addressed objections to the Rule 30(b)(6) *notice* in general, id. at *2, and that such

---

[3] The Federal Rules of Civil Procedure make clear that a Rule 30(b)(6) deponent "*must* testify about information known or reasonably available to the organization."  Fed. R. Civ. P. 30(b)(6) (emphasis added).

objections "should be considered in the context of a motion to compel," id.  Even if we assume arguendo that <u>Sprint</u> created confusion, that confusion could have been dispelled by resorting to the federal rules and case law, neither of which support Defendants' actions here.  <u>See</u> <u>Resolution Trust Corp.</u>, 73 F.3d at 266; <u>Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.</u>, 497 F.3d 1135, 1147-48 (10th Cir. 2007).

Finally, the district court erred by relying in part on the grant of summary judgment to render sanctions moot.  As Defendants noted in their motion to review the magistrate judge's order, Aplee. Supp. App. 654 n.3, the grant of summary judgment rendered moot the motion to compel additional discovery but not the award of sanctions, which is addressed independently.  Thus, the district court erred in relying on summary judgment, in part, to reverse the magistrate judge's sanctions award.  On remand, the district court should reinstate the award.

AFFIRMED in part and REVERSED in part, and REMANDED.  The motion for certification is DENIED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

12-3308, *Lykins v. CertainTeed Corp., et al.*

**BACHARACH, J.**, Circuit Judge, concurring in part and dissenting in part.


I join the majority opinion on the merits (Part A). On the sanctions issue (Part B), however, I respectfully dissent.

I interpret the Plaintiff's argument on sanctions differently than the majority does. In my view, the Plaintiff made only one argument in his appeal on the sanctions: that the district court erroneously regarded the sanctions issue as moot in light of the summary judgment ruling. This argument rests on a misreading of the district court's ruling. The district judge applied mootness to the underlying discovery issue, not to the sanctions issue.

The district judge reasoned that sanctions were inappropriate based on the totality of circumstances. That determination was appropriate, for the court can decline to impose sanctions when circumstances would render them unjust. *See* Fed. R. Civ. P. 37(d)(3). One of these circumstances was that the district judge granted summary judgment to the Defendants before ruling on the discovery issue.

The majority concludes that the district judge failed to apply the clear-error standard to the magistrate judge's assessment of sanctions. But, the Plaintiff challenged the ruling based on a misunderstanding of what the judge had said—not a misapplication of the clear-error standard. And, in my view, we

should decline to reverse on a ground not raised by the parties. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011).[1]

Accordingly, I respectfully dissent on the majority's decision regarding sanctions.

---

[1]     The majority opinion notes that the standard of review is "[o]bviously . . . a threshold legal issue which we must consider." Majority Op. at 12 n.2. I agree when the issue involves our standard of review. But here, the clear-error standard applied to the district judge's review, not our own. As the majority notes, we review the district judge's ruling for an abuse of discretion. In any event, we apply our standard of review to arguments made by the parties, not to those the parties could have made. Here, the Plaintiff's argument is simply wrong because it rests on a misreading of the district judge's order. In my view, this argument cannot justify reversal even if we were to consider the district judge's application of his own standard of review.