BACHARACH, J.,
dissenting.
The majority concludes that under the Indian Gaming Regulatory Act, a state’s regulation of gaming on tribal land is *1237 preempted only'when the regulation is direct—not indirect. But in my view, the Pueblo’s well-pleaded allegations trigger preemption of New Mexico’s regulation of the Pueblo’s vendors. Accordingly, I respectfully dissent.
The threshold issue here is which test governs the preemption issue. The district court applied a traditional preemption test, concluding that New Mexico’s regulation of the Pueblo’s vendors is not preempted by IGRA. The Pueblo urges application of a stricter preemption test, which is outlined in White Mountain Apache Tribe v. Bracker, 448 U.S, 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980). Under this test, the court conducts “a particularized inquiry into the nature of the state, federal, and tribal interests at stake,” Bracker, 448 U.S. at 144, 100 S.Ct. 2578. This particularized inquiry leads to preemption if state regulation “interferes or is incompatible with federal and tribal interests reflected in federal law, unless the State interests are sufficient to justify the assertion of State authority.” New Mexico v. Mescalero Apache Tribe, 462 U.S. 324, 325, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983).[1]
To determine which test to apply, the majority asks “whether the State is regulating Indian gaming on tribal lands.” Maj. Op, at 1233. In my view, the majority’s framing of the issue would require us to apply the stricter preemption test outlined in Bracker. Because the district court did not apply that test, I would reverse and remand.
The majority’s contrary view is based on case law involving taxation of non-Indians in Indian country. In. that setting, we have held that “ancillary effects arising from enforcement of nondiseriminatory state laws outside Indian country” do not call for a more rigorous preemption analysis. Muscogee (Creek) Nation v. Pruitt, 669 F.3d 1159, 1181 (10th Cir. 2012), That holding does not apply here because the effects of New Mexico’s-regulation on the Pueblo tribe were not “ancillary.”
We have regarded the effects as “ancillary” only when they were truly minimal. For example, in Muscogee (Creek) Nation v. Pruitt, we regarded the possible effects of Oklahoma’s cigarette taxation regime on the Muscogee Nation as ancillary with respect to
• the “ ‘minimal burdens’ on Indians to collect cigarette taxes from non-Indians for transactions occurring in Indian country” and
• the unavailability of certain brands of cigarettes in Indian country.
Muscogee Nation, 669 F.3d at 1176, 1181 (quoting Moe v. Conf. Salish & Kootenai Tribes of Flathead Reservation, 425 U.S. 463, 483, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976)).
In determining whether to apply Bracker, neither the Supreme Court nor our court has ever drawn a rigid distinction based on the directness of the effect- on a tribe. To the contrary, the Supreme Court’s opinions on Indian taxation establish that Bracker may be triggered even when the burden on the tribe is indirect.
For example, the Supreme Court addressed this issue in Ramah Navajo School Board, Inc. v. Bureau of Revenue, 458 U.S. 832, 102 S.Ct. 3394, 73 L.Ed.2d *1238 1174 (1982). In Ramah Navajo, the Ramah Navajo contracted with a non-Indian construction firm to build a school on Indian land. The contract required the Ramah Navajo to reimburse the firm for all costs of construction, including a gross receipts tax levied by New Mexico. The firm paid the tax and obtained reimbursement from the Ramah Navajo. 458 U.S. at 835, 102 S.Ct. 3394. The Ramah Navajo sought a refund based on preemption of the tax by various federal statutes and regulations. Id. at 840, 102 S.Ct. 3394.
The Supreme Court found preemption of New Mexico’s assessment of the gross receipts tax on the Ramah Navajo’s construction firm. Preemption was necessary, the Court explained, because Bmcker was “indistinguishable in all relevant respects” even though the state had levied the tax outside Indian country, directly burdening only the non-Indian construction firm. Id. at 839, 843-44, 102 S.Ct. 3394.
New Mexico had urged the Supreme Court to adopt a test under which the stricter preemption test would be used only when “the legal incidence and not the actual burden of the tax” falls in Indian country. Id. at 844, 102 S.Ct. 3394 n.8. The Court rejected this argument:
[I]n [White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980) ], we found it significant that the economic burden of the asserted taxes would ultimately fall on the Tribe, even though the legal incidence of the tax was on the non-Indian logging company. Given the comprehensive federal regulatory scheme at issue here, we decline to allow the State to impose additional burdens on the significant federal interest in fostering Indian-run educational institutions, even if those burdens are imposed indirectly through a tax on a non-Indian contractor for work done on the reservation.

Id.

New Mexico’s actions against the Pueblo involve regulation, not taxation. But, the majority’s reliance on Indian taxation cases would also require us to apply the reasoning from Ramah Navajo. Our case involves a “comprehensive federal regulatory scheme,” embodied in IGRA, like the regulatory scheme that triggered preemption in Ramah Navajo.
The majority attempts to distinguish Ramah Navajo on the ground that IGRA does not expressly regulate licensing for vendors and contemplates the coexistence of state and federal gaming regulation. Maj. Op. at 1235. I respectfully disagree with these efforts to distinguish Ramah Navajo.
There, the statutes were also silent on the tax at issue (a tax on a non-Indian firm’s construction of a school on Indian land). See Ramah Navajo, 458 U.S. at 843, 102 S.Ct. 3394. Notwithstanding the statutes’ silence on the state tax, the Supreme Court found preemption based on the general breadth of the regulatory scheme. Id. at 843-44, 102 S.Ct. 3394.
The same is true here: Like the regulatory scheme in Ramah Navajo, IGRA does not directly address the particular matter at issue (a state’s licensing of gaming vendors). But IGRA’s preemptive sweep is broad, just like the regulatory scheme at issue in Ramah Navajo. See Gaming Corp. of Am. v. Dorsey & Whitney, 88 F.3d 536, 545 (8th Cir. 1996) (discussing IGRA’s “extraordinary preemptive power”).
The majority also points out that IGRA contemplated the coexistence of some state and federal regulatory laws. Maj. Op. at 1235. This is true, but does not distinguish Ramah Navajo. Though state gaming laws *1239 are enforceable under IGRA, the absence of a compact leaves the federal government with exclusive jurisdiction to carryout that enforcement. See 18 U.S.C. § 1166(d); see also Gaming Corp., 88 F.3d at 547 (“With only ... limited exceptions ..., Congress left the states without a significant role under IGRA unless one is negotiated through a compact.”)
Ramah Navajo requires assessment of the effect of the state regulatory action on the Pueblo. See Cabazon Band of Mission Indians v. Wilson, 37 F.3d 430, 434 (9th Cir. 1994) (relying on Ramah Navajo to find preemption of a state fee imposed on licensees because the actual burden had fallen on two Indian bands conducting gambling businesses on tribal reservations). That assessment begins with the standard of review. See United States v. Fonseca, 744 F.3d 674, 682 (10th Cir. 2014) (“ ‘[T]he court, not the parties, must determine the standard of review, and therefore, it cannot be waived.’ ” (quoting Worth v. Tyer, 276 F.3d 249, 262 n.4 (7th Cir. 2001))). As the majority states, our review is de novo. But we must apply de novo review based on the standard in effect in district court. See Lykins v. CertainTeed Corp., 555 Fed.Appx. 791, 797 n.2 (10th Cir. 2014) (unpublished) (stating that we obviously must apply the standard of review governing in district court even though the standard had gone unaddressed in the parties’ appeal briefs).
The district court was considering a motion to dismiss under Rule 12(b)(6). “[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.” Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009).
Under this standard, we must credit the Pueblo’s allegations in the complaint. These allegations state that New Mexico was targeting vendors in order to punish the Pueblo, resulting in major disruption to the Pueblo’s gaming operations. Complaint ¶¶ 73, 76, 78, 80. This targeting of vendors for a punitive purpose would constitute regulation of the Pueblo’s gaming activity on tribal land.
Suppose that the state strips a utility of its license for offering utilities to the Pueblo, forcing it to close gaming operations on tribal property. What is the difference between that sort of regulation and an order to stop gaming operations (which the majority acknowledges is impermissible)? Maj. Op. at 1233.
As alleged in the complaint, New Mexico is regulating Indian gaming on tribal land. This form of regulation triggers the more stringent preemption test in Bracker, which applies to state regulation of tribal gaming activity on Indian land. As a result, I would remand for the district court to reconsider preemption of New Mexico’s regulatory actions under the test outlined in Bracker.
[[Image here]]
This appeal turns on what constitutes regulation of tribal gaming. The majority answers narrowly, stating that New Mexico is regulating Indian gaming only when the regulation is directly applied to Indian gaming on tribal land. In my view, this approach is unsupportable and unrealistic. Under the allegations in the Pueblo’s complaint, New Mexico is trying—with considerable success—to disrupt the Pueblo’s gaming operations by targeting the Pueblo’s vendors. This disruption is not softened by the state’s strategy of targeting vendors.
In reviewing the dismissal for failure to state a valid claim, I would conclude that IGRA preempts New Mexico’s regulations regardless of whether the regulations af- *1240 feet the Pueblo directly or indirectly. Thé blow to the Pueblo is the same either way. Thus, I respectfully dissent.

. The majority states that the Bracker test arises in the context of state taxation. Maj. Op. at 1232-33. That is true, but the Supreme Court and our court have also applied Bracker in various other settings; See, e.g., New Mexico v. Mescalero Apache Tribe, 462 U.S. 324, 333, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983) (applying Bracker to preempt enforcement of New Mexico's hunting and fishing regulations on tribal land); Ute Mountain Ute Tribe v. Rodriguez, 660 F.3d 1177, 1186, 1202-03 (10th Cir. 2011) (applying Bracker to consider possible preemption based on the Indian Mineral Development Act).