No. 126,979

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BRITTANY CONGE,
*Appellant*,

v.

CITY OF OLATHE,
*Appellee*.

SYLLABUS BY THE COURT

1.

Summary judgment is appropriate in the district court when all the available evidence demonstrates that no genuine issue of material fact remains, entitling the moving party to judgment as a matter of law.

2.

In ruling on a motion for summary judgment, a district court must resolve all facts and reasonable inferences from the evidence in favor of the party against whom judgment is sought.

3.

The party opposing a motion for summary judgment must come forward with evidence that establishes a genuine dispute regarding a material fact. A factual dispute is not material unless it has legal force as to a controlling issue.

4.

A party cannot avoid summary judgment based on speculation or the hope that something may develop later during discovery or at trial.

1

5.

A person claiming retaliatory discharge for whistleblowing has the burden of establishing every element of the claim by clear and convincing evidence.

6.

To establish a prima facie case of unlawful retaliatory discharge for whistleblowing, one must prove the following elements: (1) a reasonable person would conclude that the employer or the employee's coworker was engaged in activity that violated rules, regulations, or the law pertaining to public health, safety, and welfare; (2) the employer knew about the reporting of the violation before discharging the employee; (3) the employer discharged the employee in retaliation for reporting the violation; and (4) the employee acted in good faith based on a legitimate concern about the wrongful activity.

7.

If an employee can demonstrate a prima facie case of retaliatory discharge based on whistleblowing, the burden of proof shifts to the employer to come forward with evidence establishing that the employee was terminated for a legitimate nonretaliatory reason. If the employer is able to come forward with such evidence, the burden shifts back to the employee to come forward with evidence to show that the reason given by the employer for the termination of employment was pretextual.

8.

Summary judgment is appropriate in a retaliatory discharge case when an employee fails to establish a prima facie case. It is also appropriate when the employer has come forward with evidence of a legitimate nonretaliatory reason for the termination and the employee fails to come forward with evidence establishing that the reason given was pretextual.

Appeal from Johnson District Court; K. CHRISTOPHER JAYARAM, judge. Submitted without oral argument. Opinion filed June 21, 2024. Affirmed.

*Albert F. Kuhl*, of Law Offices of Albert F. Kuhl, of Overland Park, for appellant.

*Tara Eberline*, of Foulston Siefkin LLP, of Overland Park, for appellee.

Before BRUNS, P.J., HILL, J., and MARY E. CHRISTOPHER, S.J.

BRUNS, J.: Brittany Conge appeals the district court's decision to grant summary judgment in favor of the City of Olathe on her claim of retaliatory discharge. On appeal, Conge contends that the district court erred in granting the City summary judgment as a matter of law because she came forward with sufficient evidence to establish a prima facie case for retaliatory discharge. Conge also contends that despite the City coming forward with evidence establishing that she was terminated for violating the Olathe Police Department's policy on dishonesty, the reason given by the City was pretextual. Based on our review of the record on appeal in light of Kansas law, we conclude that the district court's granting of summary judgment in favor of the City was appropriate. Thus, we affirm.

FACTS

*Background Information*

Conge was employed by the City of Olathe's police department beginning in June 2014. As part of her onboarding with the police department, Conge received information about and acknowledged receipt of various City policies. Significantly, she received the police department's policy manual that included specific policies on "Dishonest or Untruthfulness," "Information Technology Use," and "Protected Information."

The police department's "Dishonest or Untruthfulness" policy states:

"Members shall not lie, omit information, give misleading information or half-truths, or falsify written or verbal communications in official reports or in their statements or actions with supervisors, another person, or organization when it is reasonable to expect that such information may be relied upon because of the member's position or affiliation with this organization."

Likewise, the police department's "Protected Information" policy provides that: "Members of the Olathe Police Department will adhere to all applicable laws, orders, regulations, use agreements and training related to the access, use, dissemination and release of protected information." In addition, the "Information Technology" policy provides that access to technology and resources provided by the police department "shall be strictly limited to department-related activities." The section on "OFF-DUTY USE" states that "[m]embers shall only use technology resources provided by the Department while on-duty or in conjunction with specific on-call assignments unless specifically authorized by a supervisor."

Besides the training that Conge received when she was hired, she annually completed the police department's security awareness training. This training included the appropriate use of the Kansas Criminal Justice Information System (KCJIS) to conduct records checks. In particular, it included how to appropriately run a license plate check. As part of this training, Conge acknowledged that the use of information from KCJIS "must be necessary for work assignments to be completed or for proper dissemination and cannot be obtained for a personal desire to know."

The City has a zero-tolerance policy for dishonesty or untruthfulness for its officers. Likewise, the police department has a policy requiring the disclosure of evidence favorable to a defendant that is either exculpatory or impeaching the credibility of an officer involved in a case. These policies are based on the decisions of the United States

4

Supreme Court in *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), and *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

In June 2017, Conge applied for and was selected to the police department's hostage crisis negotiation team. The following year, she was selected for a rotation-based detective position. In February 2019, Conge received a permanent, detective position. It is undisputed that the Olathe Police Department is managed by a Chief of Police. At all times relevant to the issues presented in this appeal, Mike Butaud served as Chief of Police, and he was ultimately responsible for making the decision to terminate Conge's employment.

*Events Leading to Termination*

The record reflects that Conge was involved in a romantic relationship with another officer of the Olathe Police Department—Detective Justin Leach—that ended in early October 2019. While off duty on October 20, 2019, Conge drove to Detective Leach's residence around 3 a.m. and observed a vehicle in the driveway that she did not recognize. Conge called the police department and spoke with the on-duty officer—Kristoffer Ranaig—to ask him to run a KCJIS record check on the vehicle's license plate. Although Officer Ranaig did not know it at the time, Conge did not have a work-related reason for her request.

Officer Ranaig then used the KCJIS system to run the license plate. After doing so, he notified Conge of the vehicle's registered owner. Conge used this information to look up the registered owner on Facebook. She then exited her vehicle, rang Detective Leach's doorbell, and engaged in a verbal confrontation with him at the front door of his residence. The incident was recorded on Detective Leach's Ring doorbell, and the videos were subsequently provided to the police department.

5

Detective Leach closed the door to his residence while he retrieved a box of Conge's personal items from his vehicle. After receiving her personal belongings, Conge returned to her vehicle and called Sergeant Kevin Dornes who was on duty at the time. Sergeant Dornes told Conge that she could come to the police station if she wanted to speak with him. At about 4 a.m., Conge arrived at the station to speak with Sergeant Dornes. When she met with him, Sergeant Dornes was working and wearing his police uniform. During their conversation, Conge told Sergeant Dornes that she had run a record check on the vehicle parked in Detective Leach's driveway by using her cell phone before looking at the registered owner's profile on Facebook.

When Sergeant Dornes questioned Conge about how she ran the record check using her cell phone, she told him she used her cell phone "all the time" for KCJIS purposes while working in the field. During an interview with internal affairs and again during her deposition in this case, Conge admitted that she told Sergeant Dornes that she had "ran the tag"—referring to a KCJIS records search. Conge also admitted that she did not tell Sergeant Dornes that she had called Officer Ranaig to run the tag for her.

Conge does not dispute that she has never run a KCJIS search on her cell phone as she had claimed when speaking to Sergeant Dornes. Moreover, it is undisputed that she had not used her City-issued security token required to run a KCJIS search on a computer for several months. It is also undisputed that it is not possible to access the KCJIS database from cell phones.

After speaking with Conge on the morning of the incident, Officer Dornes notified the on-duty Watch Commander, Captain Ryan Henson, about his conversation with her. At Captain Henson's request—and before his shift ended—Sergeant Dornes prepared a two-page memorandum describing his interaction with Conge. At the time Sergeant Dornes wrote up his report, he simply believed that Conge had misused police department resources for personal use and did not know that Conge's statement about

running the check of the license plate herself was false. Conge does not dispute the reason Sergeant Dornes made the report.

Around 7:30 a.m. the day of the incident, Captain Henson emailed Sergeant Dornes' report to Major Grant Allen. In the email, Captain Henson stated that Conge had claimed to have used her cell phone to run the vehicle tag through KCJIS. The next day, at the request of her direct supervisor, Sergeant Courtney Totte-Boyd, Conge drafted a memorandum about the incident. After completing the memorandum, Conge submitted it to Major Allen. When she did so, Conge admitted that she had actually called the station and asked the duty officer to run the license plate.

When Major Allen asked Conge why she did not tell Sergeant Dornes the truth, she said that she did not want to get anyone else involved or to put Officer Ranaig in a bad situation. In her response to the City's motion for summary judgment in this case, Conge claimed she never admitted any wrongdoing to Major Allen. She also claimed that she never made a statement about not involving Officer Ranaig. But her deposition testimony reveals otherwise.

The following day, Major Allen prepared a memorandum on his understanding of the events that took place at Detective Leach's residence, Conge's conversation with Sergeant Dornes, and his own conversation with Conge. In his memorandum, Major Allen recommended that the matter be referred to internal affairs for investigation based on Conge's admission that she had not been truthful with Sergeant Dornes. The memorandum mentioned no other incidents regarding Conge's employment with the police department. Also, at the request of Major Allen, both Officer Ranaig and Detective Leach submitted written statements about their knowledge of the events.

Deputy Chief Shawn Reynolds and Chief Butaud concurred with Major Allen's recommendation that the matter be referred to internal affairs for investigation. Chief

7

Butaud testified in his deposition taken in this case about his suspicion—after reviewing the memoranda submitted regarding the incident—that there "was a high likelihood there was a veracity concern involved." In his deposition, Chief Butaud also testified that "[a]ny time that there is a question of truthfulness with an employee, it goes to internal affairs."

On October 22, 2019, the police department officially opened an internal affairs investigation into the incident and Conge was placed on administrative leave. Sergeant Carl Anderson was assigned to conduct the investigation. During his investigation, Sergeant Anderson reviewed the videos from the Ring doorbell, documents from Conge's most recent KCJIS Security Awareness Training, and the various memoranda that were submitted by witnesses. Additionally, Sergeant Anderson conducted recorded interviews with Major Allen, Sergeant Dornes, Officer Ranaig, Detective Leach, and Conge.

After completing his investigation, Sergeant Anderson prepared an investigation report in which he summarized his findings. However, Sergeant Anderson did not make a recommendation as to any potential discipline that should be imposed. Neither Conge's involvement with any other cases nor her performance at work were mentioned in the report. No other issues were discussed in Sergeant Anderson's report besides those relating to this incident.

After reviewing Sergeant Anderson's report, Major John Roland found that Conge violated the police department's policies on (1) "Dishonest or Untruthfulness," (2) "Information Technology Use," and (3) "Protected Information." Major Roland determined that Conge was aware of the police department's policies governing the appropriate use of KCJIS and that the license plate check was performed for her personal use to determine who Detective Leach was with rather than for official business. In addition, Major Roland concluded that Conge "purposefully omitted relevant information when speaking with Sgt. Dornes."

8

Furthermore, Major Roland found that Conge committed the following instances of dishonesty or untruthfulness:

- During her internal affairs interview, Conge reported that she told Sergeant Dornes: "I ran the tag," which was "proven to be a lie."

- In her internal affairs interview, Conge claimed she did not care who was in the house with Detective Leach, but the videos show that Conge had a "clear interest in who was inside." In addition, the report indicated that Conge "was not forthcoming about her intentions while at Detective Leach's house."

- In her internal affairs interview, Conge justifies the act of calling into the station to have the tag run by stating that "she's done it occasionally for others calling in to make the same request." In the same interview, Conge later admits that she has not used the system in months and does not even know where her token is to get into the system.

- In her internal affairs interview, Conge denied that jealousy was a motivating factor for looking up the owner of the vehicle tag. Conge stated that if jealousy was a factor, she would have done something crazy such as tried to look in a window or enter the house. The report pointed out that Conge's "statements contradict her actions and interaction with Detective Leach that morning," and noted that Conge did "try to enter Detective Leach's house."

- In her memo, Conge wrote that she responded to the station and confided everything that happened to Sergeant Dornes. The report stated this was false because Conge "omitted the relevant fact" that she called the station office to have the records check done.

- During Sergeant Dornes' internal affairs interview, he stated that Conge told him that she used her cell phone to access the KCJIS database to

9

conduct the records check. When Sergeant Dornes questioned her about that story, Conge told him that it was possible to use her cell phone to access the information on a website, and we "'do it all the time.'" The report indicated this was a lie because "it is not possible to access the database by phone."

Based on his findings, Major Roland recommended that Conge's employment with the police department be terminated. His recommendation mentioned no other alleged incidents nor did it mention Conge's involvement with any other case. After reviewing the report and the investigation file, Chief Butaud made the decision to terminate Conge for the reasons set forth in Major Roland's report.

On February 18, 2020, Chief Butaud provided Conge with a Disciplinary Decision. In the decision, Chief Butaud advised Conge of her termination from the Olathe Police Department. He explained that the primary grounds for her termination was a violation of the police department's zero-tolerance policy on dishonesty. Nowhere in the Disciplinary Decision is there a reference to any other cases or incidents other than the one that led to the internal affairs investigation. After Conge's discharge, Chief Butaud notified the district attorney's office in a letter that she had been terminated from the police department "with a *Giglio* status," but did not include any details about her termination.

*Retaliatory Discharge Lawsuit*

On November 16, 2021, Conge filed a petition for damages against the City of Olathe. In her petition, Conge alleged that her termination was wrongful and done in retaliation for her exercising "rights and privileges consistent with department policies to protect the rights of crime victims and/or those accused of crimes." In the lawsuit, Conge

alleged that she participated in three instances of purported whistleblowing during her employment with the police department before her termination.

The three instances of alleged whistleblowing identified were:

1. *High-profile Domestic Violence Case*

Conge claims she engaged in whistleblowing by complaining about her caseload. Specifically, she referred to her assignment to a high-profile domestic violence case. In her written statement—dated October 21, 2019—regarding the events that led to her termination, Conge stated:

> "I received a high profile [domestic violence] case involving a Johnson County Deputy in May of this year. This case occupied most, if not all, of my time for approximately 3 months and the case is still being worked. I was told to focus on this case because it was considered high profile, and so I focused most of my attention on it. I only deviated from this case if there was another more pressing/life threatening case that arose and needed immediate attention.

> "I expressed my concerns about my increasing case load and the stress of this specific case to multiple co-workers throughout the summer. I also spoke with Sergeant Anderson about the victim in this case becoming too much to handle. The victim would call me non-stop, had sent over a hundred emails and text messages, and left multiple 5 minute voicemails for me almost every day. Eventually, around July 4th, I reached out to Sergeant Anderson to contact the victim because it was becoming too much for me and impeding my performance on the case. Sergeant Anderson did reach out, but this only made it worse. From that point on the phone calls and emails increased, but I also started receiving calls from patrol officers because the victim began calling 911 non-stop. I would receive calls from patrol officers on my days off as well as late at night when I was already home. I did not hide any of this and made it very clear at work that this was becoming too much for me. I also spoke with Sergeant Anderson about working overtime

11

on the weekends to get caught up. I was hesitant to do this because I needed to keep my personal time to have time to detach from work and keep my mind clear."

Yet in her deposition she testified that she never complained about this domestic violence case to Chief Butaud. Nor could she recall whether she raised any complaints to Major Roland. Instead, Conge claimed she told several of her coworkers—including Major Allen and Sergeant Anderson—that she was overwhelmed with the volume of work related to this case.

It is undisputed that Conge does not believe any employee of the police department involved in this domestic violence case violated the law. Similarly, when asked in her deposition whether a police department employee involved in this case had violated any rules or regulations, Conge stated that she believed that the City should have used a mental health co-responder to assist the victim. But Conge was unaware of any police department policy that was not followed, nor did she make any complaints about not having a mental health co-responder assigned to the domestic violence case. While the police department has discretion to use mental health co-responders as needed, it is undisputed that there is no rule, regulation, or law requiring them to be used.

2. *Wrongful Arrest Case*

For her second instance of alleged whistleblowing, Conge points to a case involving a suspect accused of domestic violence stalking, telephone harassment, and blackmail to which she was assigned in September 2019. After reviewing the details of the suspect's arrest, Conge believed it resulted from a dishonest victim, a lack of evidence, and poor decision-making by one or more of her fellow officers. As a result of her investigation, Conge sought permission to and was able to have the suspect's arrest reversed.

12

In her deposition, Conge could not identify any specifics about the case. In particular, she could not recall the name of the suspect, the victim, or the officers involved in the arrest or investigation. Conge believed that Overland Park police officers had picked up the suspect on an arrest warrant, that Sergeant Tim Sweany may have approved the arrest, and that she may have discussed the case with Sergeant Anderson at one point. But neither Sergeant Sweany nor Sergeant Anderson recalled the matter, nor did they remember any discussion that they had with Conge about such a case. We note that Sergeant Sweany played no role in the internal affairs investigation of Conge leading to her termination, and there is no evidence in the record to suggest that Sergeant Anderson considered this matter in his investigation of Conge in this case.

Conge admitted in her deposition that she never complained about this matter to Chief Butaud or to Major Roland. Conge also has not identified complaints she made to anyone about this domestic violence case, nor has she identified any law, rule, or regulation that was allegedly violated. Instead, Conge simply asserts that the unknown arrest was "bad," and she sought to correct it because the officers involved "did not perform their job properly." Although she stated that there is "probably a standard of how you perform investigations," she admitted she did not know what that procedure would be. In any event, Conge has identified no complaints she made about this matter nor has she identified any law, rule, or regulation that the arrest purportedly violated.

### 3. *Removal from Hostage Crisis Negotiation Team*

In October 2019, Conge was informed that she was being removed from the hostage crisis negotiation team. The stated purpose of Conge's removal from the hostage crisis negotiation team was to allow her to focus on reducing her caseload. It is undisputed that her removal from the team was not a demotion and she remained in her position as a detective. In her deposition, Conge claimed her removal from the team was a disciplinary action. But once again Conge has identified no complaints she made

13

following her removal from the hostage crisis negotiation team, nor does she identify how her removal from that assignment violated any laws, rules, or regulations.

*Summary Judgment Motion*

After extensive discovery, the City moved for summary judgment on March 17, 2023. In the motion, the City asked the district court to grant summary judgment in its favor because there are no genuine issues of material fact. The City supported its motion with a statement of uncontroverted facts and a memorandum of law. In response, Conge filed a memorandum in which—as the district court observed—she loosely complied with Supreme Court Rule 141 (2023 Kan. S. Ct. R. at 223) and in which she stated several additional facts.

On August 14, 2023, the district court granted the City summary judgment as a matter of law on Conge's sole claim of retaliatory discharge. The district court determined that based on the uncontroverted material facts, "no reasonable fact finder could conclude that [Conge] has met her burden." The district court explained that Conge had failed to come forward with evidence to establish a prima facie claim of retaliatory discharge. Likewise, the district court explained that even if she had done so, Conge had failed to come forward with evidence to demonstrate that the reason given by the City for her termination was pretextual. Finally, the district court concluded that the City had shown a "valid and non-discriminatory basis for Conge's termination."

Thereafter, Conge filed a timely notice of appeal.

ANALYSIS

On appeal, Conge contends that the district court erred in granting the City's motion for summary judgment. She argues that she has identified at least three incidents

14

of protected activity that would support her prima facie claim of retaliatory discharge. In response, the City contends that the district court properly granted summary judgment in its favor. The City asserts that the district court correctly found that Conge failed to establish a genuine issue of material fact to justify her retaliatory discharge claim proceeding to trial. The City argues that Conge's allegations "rely on nothing more than her personal beliefs, immaterial facts, and misrepresented or unsupported assertions of fact not found in the record."

*Standard of Review*

Summary judgment is appropriate in the district court when all the available evidence demonstrates that no genuine issue of material fact remains, entitling the moving party to judgment as a matter of law. In resolving a motion for summary judgment, a district court must resolve all facts and reasonable inferences from the evidence in favor of the party against whom judgment is sought. Then, the party opposing a motion for summary judgment must come forward with evidence that establishes a dispute to a material fact, meaning a fact material to the conclusive issues of the case. *First Security Bank v. Buehne*, 314 Kan. 507, 510, 501 P.3d 362 (2021).

To preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. When reasonable minds could differ as to the legal conclusions drawn from the evidence, the district court must deny the motion for summary judgment. On appeal, we apply the same standards as the district court applied. *Jeffries v. United Rotary Brush Corp.*, 62 Kan. App. 2d 354, 357-58, 515 P.3d 743 (2022).

When reasonable minds could differ as to the legal conclusions drawn from the evidence and the motion has been granted by the district court, the appellate court must reverse the ruling granting summary judgment. See *First Security Bank*, 314 Kan. at 510.

But if Conge failed to come forward with evidence sufficient to reach a jury on each element of her claim—as the district court found in this case—summary judgment would be appropriate.

A factual dispute is not genuine unless it has legal force as to a controlling issue. In other words, a disputed question of fact which is immaterial to the issue presented does not preclude summary judgment. If the disputed fact could not affect the judgment, it does not present a "genuine issue" for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106, *cert. denied* 571 U.S. 826 (2013). Furthermore, a "'party cannot avoid summary judgment on the mere hope that something may develop later during discovery or at trial. Mere speculation is similarly insufficient to avoid summary judgment.' [Citations omitted.]" *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019).

*Elements of Claim for Retaliatory Discharge*

A plaintiff claiming retaliatory discharge has the burden of establishing every element of the claim by clear and convincing evidence. *Shaw v. Southwest Kansas Groundwater Mgmt. Dist. 3*, 42 Kan. App. 2d 994, 999, 219 P.3d 857 (2009). To be clear and convincing, the truth of the evidence must be highly probable. *In re Murphy*, 312 Kan. 203, 218, 473 P.3d 886 (2020). In ruling on a summary judgment motion, the court does not weigh the evidence but determines only whether the evidence is sufficient to establish the claim. See *Esquivel v. Watters*, 286 Kan. 292, 296, 183 P.3d 847 (2008); see also *Ingram v. Martin Marietta Long Term Disability Income Plan*, 244 F.3d 1109, 1114 (9th Cir. 2001) ("On summary judgment, the proper task is not to weigh conflicting evidence, but rather to ask whether the non-moving party has produced sufficient evidence to permit the fact finder to hold in his favor.").

*Failure to Establish a Prima Facie Case*

As a general rule, employers and employees in Kansas can terminate the employment relationship at any time and for any reason unless the parties have an express or implied contract regarding the terms of employment. This legal doctrine is known as employment-at-will. See *Hill v. State*, 310 Kan. 490, 500, 448 P.3d 457 (2019) (citing *Lumry v. State*, 305 Kan. 545, 562, 385 P.3d 479 [2016]; *Campbell v. Husky Hogs*, 292 Kan. 225, 227, 255 P.3d 1 [2011]). As such, at-will employees may generally be discharged for "good cause, for no cause, or even for the wrong cause." *Goodman v. Wesley Medical Ctr., L.L.C.*, 276 Kan. 586, 589, 78 P.3d 817 (2003).

An exception to the at-will employment doctrine prohibits an employer from discharging an employee in retaliation for the employee's exercise of certain statutory or common-law rights as a matter of public policy. Here, Conge asserts the "whistleblower" exception to the employment-at-will doctrine. This exception protects employees from retaliatory discharge for reporting violations of laws, rules, or regulations that pertain to public health, safety, or welfare. See *Hill*, 310 Kan. at 500-01 (citing *Pfeifer v. Federal Express Corp.*, 297 Kan. 547, 554-56, 304 P.3d 1226 [2013]); *Husky Hogs*, 292 Kan. at 228; *Palmer v. Brown*, 242 Kan. 893, 900, 752 P.2d 685 (1988).

To establish a prima facie case of unlawful retaliatory discharge for whistleblowing, a plaintiff must come forward with evidence to support the following elements: (1) a reasonably prudent person would have concluded the employee's coworker or employer was engaged in activity that violated rules, regulations, or the law pertaining to public health, safety, and the general welfare; (2) the employer knew about the employee's reporting of such violation before discharge of the employee; (3) the employer discharged the employee in retaliation for making the report; and (4) the employee engaged in whistleblowing in good faith based on a concern about the

wrongful activity rather than for a corrupt motive. *Goodman*, 276 Kan. at 589-90 (citing *Palmer*, 242 Kan. at 900).

If an employee can come forward with evidence to establish a prima facie case of retaliatory discharge based on whistleblowing, the burden then shifts to the employer to come forward with evidence to establish that the employee was terminated for a legitimate nonretaliatory reason. If the employer is able to come forward with such evidence, the burden then shifts back to the employee to show that the reason given by the employer for terminating their employment is simply pretextual. *Goodman*, 276 Kan. at 590.

A pretext is a false reason that is given to conceal the true intentions for an action. So, a pretext is a "mere cover-up" for the true reason that the employee was discharged. *Bracken v. Dixon Industries*, 272 Kan. 1272, 1276, 38 P.3d 679 (2002). Pretext can be shown by: (1) evidence that the employer's stated reason for discharge was false; (2) evidence that the employer acted in contradiction to company policy; and (3) evidence that the employee was treated differently than other similarly situated employees. *DeWitt v. Southwestern Bell Telephone Co.*, 845 F.3d 1299, 1307-08 (10th Cir. 2017).

Here, in order to meet her burden to come forward with evidence sufficient to establish a prima facie case of retaliatory discharge, Conge must first show that a reasonable person would have concluded that one of her coworkers at the Olathe Police Department or her superiors were engaged in activity that violated rules, regulations, or laws pertaining to public health, safety, and the general welfare. As discussed above, Conge makes three claims that she suggests are sufficient to establish a prima facie case of retaliatory discharge.

In reviewing the record on appeal, we find no evidence that any of Conge's coworkers or her supervisors at the police department engaged in an activity that violated

rules, regulations, or the law pertaining to public health, safety, or the public welfare. Although Conge claims she requested a co-responder, asked for help, and raised questions about the size of her caseload, none of these actions are protected as a whistleblower. See *Palmer*, 242 Kan. at 900.

> "Public policy requires that citizens in a democracy be protected from reprisals for performing their civil duty of reporting infractions of rules, regulations, or the law pertaining to public health, safety, and the general welfare. Thus, we have no hesitation in holding termination of an employee in retaliation for the good faith reporting of a serious infraction of such rules, regulations, or the law by a co-worker or an employer to either company management or law enforcement officials (whistle-blowing) is an actionable tort." *Palmer*, 242 Kan. at 900.

To support a whistleblower retaliation claim, the public policy at issue "'should be so thoroughly established as a state of public mind so united and so definite and fixed that its existence is not subject to any substantial doubt.'" *Goodman*, 276 Kan. at 592 (quoting *Palmer*). Public policy violations cannot be based on an employer's subjective opinion. 276 Kan. at 592. As our Supreme Court has stated: "It would be both troublesome and unsettling to the state of the law if we were to allow a retaliatory discharge claim to be based on personal opinion of wrongdoing." 276 Kan. at 592.

General workplace disagreements—which appear to be what Conge is asserting—do not give rise to a public policy violation. See *Cain v. Kansas Corp. Comm'n*, 9 Kan. App. 2d 100, 104-05, 678 P.2d 451 (1983) (public policy exception does not apply to a plaintiff's opinion that the Kansas Corporation Commission should comply with the Kansas Securities Act); *Aiken v. Business & Industrial Health Group, Inc.*, 886 F. Supp. 1565, 1573-74 (D. Kan. 1995) (plaintiff's personal views are not public policy).

In support of her claim, Conge cites *Mattice v. City of Stafford*, No. 122,907, 2021 WL 4227730 (Kan. App. 2021) (unpublished opinion). In that case, Mattice alleged

19

specific violations of rules, regulations, or laws, including the failure to investigate an alleged crime and the violation of the statute requiring law enforcement officers to report suspected instances of child abuse. See K.S.A. 2020 Supp. 38-2223(a)(1)(D), (c)(1). In reviewing whether the district court appropriately granted the City's motion to dismiss, a panel of our court found that requiring the "whistleblower to seek to 'stop unlawful conduct' distinguishes a mere workplace dispute from those disputes related to legal requirements that could constitute whistleblowing. [Citation omitted.]" 2021 WL 4227730, at *5. Once again, it is important to recognize that Conge did not assert that any rule, regulation, or law had been violated. Likewise, she did not report that any of her coworkers or supervisors at the police participated in such conduct. Accordingly, we find the facts in this case distinguishable from *Mattice*.

Conge concedes no policy requires the assignment of a mental health co-responder under these circumstances, and the decision whether to use one is discretionary. Conge also concedes that she did not complain to anyone in her chain of command that the City or any of its employees violated the law, a regulation, or a policy by not assigning a mental health co-responder to the high-profile domestic violence case or about how her caseload was handled. Under these circumstances, Conge has not met her burden of coming forward with evidence to establish a prima facie case for her claim about the domestic violence case.

Next, Conge points to her actions to reverse a domestic violence arrest that she believed was improper. Yet the allegations she provides about this event are vague and not supported with any evidence substantiating her claim. Because arrests are supported by records, Conge should have been able to support her claim with evidence. As the district court found, Conge "was unable to identify the name of the suspect, the dates of these incidents, or the co-worker/officer purportedly involved and could only provide a vague and generic reference to the suspect's description."

20

Even if Conge could provide proof of the arrest, she again fails to assert that either the City or its employees violated any law, rule, or regulation relating to public health or safety with respect to the arrest that allegedly occurred months before her termination. Like the district court, we find this assertion of whistleblowing to be "so vague, non-specific, and implausible" that it fails to create a genuine issue of material fact in support of a prima facie case for retaliatory discharge. See *Ball v. Credit Bureau Services, Inc.*, No. 111,144, 2015 WL 4366440, at *12 (Kan. App. 2015) (unpublished opinion) (information submitted by the plaintiff in support of or opposition to motion for summary judgment must manifest "sufficient specificity" to be considered); *Fisher v. Forestwood Co., Inc.*, 525 F.3d 972, 978 (10th Cir. 2008) (information must be specific and not vague, conclusory, or self-serving). As a result, we find that Conge has not come forward with evidence to establish a prima facie case of whistleblowing.

Conge also suggests that her removal from the hostage crisis negotiation team in October 2019 supports her claim that she was a whistleblower. On appeal, she argues that her removal from the team is "evidence of retaliatory treatment after voicing concerns about her excessive caseload." But she admits that her removal from the team was not a demotion in position nor did it result in a reduction in pay. Once again, she fails to identify any law, rule, regulation, or policy that was allegedly violated by her removal from the team. As such, Conge fails to meet her burden of establishing a prima facie case as to this claim.

Generally, Conge claims that some of the people involved in the investigation that led to her termination knew of her complaints about the domestic violence case and the reversal of the arrest. Yet, it is undisputed that Major Roland—who recommended Conge's termination—did not rely on any reason other than the violations of policy occurring on October 20, 2019, and he was not even aware of any allegations that Conge was engaged in whistleblowing when he investigated the incident that led to his recommendation that she be terminated. Conge also fails to allege that Chief Butaud—

21

who ultimately determined that she should be terminated from her employment with the City—was aware of her engaging in whistleblowing or any other protected activity. See *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1203-04 (10th Cir. 2008) (affirming grant of summary judgment for the employer where decisionmaker did not know of alleged protected activity at the time of the decision to terminate). Without showing evidence that she reported a specific violation or that the decisionmaker knew about it, Conge falls short of establishing a prima facie case of retaliatory discharge.

A review of the record on appeal reveals that Conge failed to come forward with evidence to establish that she was terminated for any reason other than that identified by the City. Nor is there any evidence of a causal connection between the three situations which she identified and the events that led to her termination. In addition, Conge must come forward with evidence to show that she reported a violation of a rule, regulation, or law in good faith based on a legitimate concern about the wrongful activity. Yet there is a dearth of evidence in the record to establish that Conge reported any such violation.

In conclusion, we find that Conge has failed to meet her burden to come forward with evidence sufficient to establish a prima facie case for retaliatory discharge. As a result, she has failed to establish a genuine issue of material fact that would prevent the granting of summary judgment to the City. Conge has neither come forward with evidence to establish that she reported a violation of any law, rule, or regulation, or policy, nor has she come forward with evidence to establish that the City had knowledge that she reported such a violation.

*Failure to Come Forward with Evidence of Pretext*

Summary judgment is appropriate when an employer has a legitimate, nonretaliatory reason for the termination, and the employee fails to prove a pretext for the termination. *Gonzalez-Centeno v. N. Cent. Kansas Regional Juvenile Detention Facility*,

22

278 Kan. 427, 437, 101 P.3d 1170 (2004). Even if Conge had come forward with evidence sufficient to establish a prima facie case of retaliatory discharge, the City met its burden by coming forward with evidence that she was terminated for a legitimate, nonretaliatory reason. In addition, Conge failed to come forward with evidence to establish that the reason given by the City for her termination was pretextual.

As addressed above, once a plaintiff establishes a prima facie claim, the burden shifts to the employer to come forward with evidence to establish a legitimate, nondiscriminatory basis for terminating the employment. *Goodman*, 276 Kan. at 590. If the employer does so, then the burden shifts back to the employee to come forward with evidence to establish that the reason given is pretextual. To establish pretext, a plaintiff must show "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Degraw v. Exide Technologies*, 744 F. Supp. 2d 1199, 1208 (D. Kan. 2010).

The City explained that it terminated Conge for violating its policy on dishonesty and untruthfulness. In support of this explanation for Conge's termination, the City came forward with the police department's "Dishonest or Untruthfulness" policy as well as with evidence showing that Conge was aware of the policy. Notably, Conge does not dispute that she knew about this policy.

The Olathe Police Department's "Dishonest or Untruthfulness" policy provides that its officers "shall not lie, omit information, give misleading information or half-truths, or falsify written or verbal communications in official reports or in their statements or actions with supervisors, another person, or organization . . . ." The policy continues that the prohibition against dishonesty is applicable "when it is reasonable to expect that such information may be relied upon because of the member's position or

23

affiliation with this organization." Conge makes no argument that the policy was inapplicable to the events leading to her termination.

Likewise, Conge makes no argument that she did not violate this policy when she told Sergeant Dornes that she accessed the KCJIS system by using her own cell phone. In fact, Conge did not attempt to controvert this statement of uncontroverted fact presented by the City in its summary judgment motion: "During their conversation, Conge told [Sergeant] Dornes she ran a record check on the vehicle in Detective Leach's driveway using her cellphone and then looked up the owner on Facebook." It is also undisputed that Conge later told Major Allen she called into the police department and requested that Officer Ranaig run the record check. Accordingly, the City came forward with sufficient evidence to support its contention that Conge was terminated pursuant to the police department's zero-tolerance policy for untruthfulness.

Once the City established a legitimate basis for terminating Conge's employment, the burden shifted back to Conge to establish that the City's offered reason for employment termination was pretextual. *Goodman*, 276 Kan. at 590. The only arguments asserted by Conge that her termination was pretextual are based on mere speculation and conjecture. Although she may believe that her dishonesty was not the real reason for her termination, she failed to come forward with anything of evidentiary value to support her belief.

Under Kansas law, reliance on inferences, speculation, or conjecture is not enough to survive a summary judgment motion. *Lloyd v. Quorum Health Res., L.L.C.*, 31 Kan. App. 2d 943, 954, 77 P.3d 993 (2003). In addition, a plaintiff's reliance on his or her own subjective beliefs cannot satisfy the burden of establishing pretext for termination. See *Goodman*, 276 Kan. at 595 (affirming summary judgment where the only evidence of an unlawful motive was the employee's opinion or belief).

24

In its statement of uncontroverted facts, the City asserted—with appropriate citations to the record—that for 30 years it has consistently terminated any police officer when an investigation finds the officer was dishonest or untruthful unless the officer resigned before termination. Conge has come forward with no evidence to contradict this statement of uncontroverted fact and, as a result, it is deemed to be admitted. Moreover, a review of the record reveals that the City's action in this case adheres to this practice. Accordingly, Conge has failed to come forward with evidence to support her allegation to establish that her termination from the Olathe Police Department was pretextual.

CONCLUSION

Based on our review of the record on appeal, we find that there is no genuine issue of material fact and that the City is entitled to judgment as a matter of law. Resolving all facts and reasonable inferences from the evidence in favor of Conge, we find that she has failed to come forward with evidence that establishes a dispute over any fact material to her claim of retaliatory discharge. Specifically, we find that Conge has failed to come forward with evidence to establish a prima facie case of whistleblowing while the City has come forward with evidence to establish that it had a legitimate and nonretaliatory reason for the termination of her employment for violating its policy on dishonesty by police officers. Lastly, we find that Conge has failed to come forward with evidence to establish that the reason given by the City for her termination was a pretext.

Under these circumstances, we conclude that the district court properly granted the City's motion for summary judgment as a matter of law on Conge's retaliatory discharge claim.

Affirmed.

25